

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2004

# USA v. Fulani

Precedential or Non-Precedential: Precedential

Docket No. 03-3835

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Fulani" (2004). *2004 Decisions*. Paper 655.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/655

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 03-3835

UNITED STATES OF AMERICA,

Appellant

v.

IBRAHIM HAMUD FULANI

On Appeal from the United States
District Court for the
Middle District of Pennsylvania
(D.C. Crim. No. 02-00049)
Honorable Thomas I. Vanaskie,
Chief Judge

Argued April 22, 2004

BEFORE: SCIRICA, Chief Judge, and
ROSENN and GREENBERG,
Circuit Judges

(Filed: May 20, 2004)

Thomas A. Marino
United States Attorney
George J. Rocktashel (argued)
Assistant United States Attorney
Herman T. Schneebeli Building
240 West Third Street, Suite 316
Williamsport, PA 17701-6465

Attorneys for Appellant

James V. Wade
Federal Public Defender
Daniel I. Siegel
Assistant Federal Public Defender
Patrick A. Casey (argued)
Assistant Federal Public Defender
Kane Professional Building, Suite 2C
116 North Washington Avenue
Scranton, PA 18503-1800

Attorneys for Appellee

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on an interlocutory appeal from an order in the district court entered on August 21, 2003, granting defendant Ibrahim Hamud Fulani's motion to suppress physical evidence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 18 U.S.C. § 3731. We review the district court's decision for clear error as to underlying facts, but exercise plenary review as to conclusions of law. See United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998). For the reasons stated herein, we will reverse the district court's order.

I. BACKGROUND

On February 21, 2002, at approximately 3:15 p.m., Greyhound Lines Bus No. 6466 en route from New York to California made a scheduled stop in Monroe County, Pennsylvania, at the Delaware Water Gap. With the driver's permission, two agents from the Pennsylvania State Attorney General's Bureau of Narcotics Investigation, Ronald Paret and Jeffrey P. Aster, boarded the bus. Both agents were dressed in plain clothes but wore visible badges. They carried concealed weapons under their coats. Agent Paret made a general announcement over the public address system, identifying himself and Agent Aster and stating that their purpose was to investigate drug trafficking. He advised the passengers that their "cooperation was appreciated, but not required."

Next, Agent Paret spoke individually to all 50 passengers on the bus, asking where they were headed, whether they had any luggage, and if they would produce their bus tickets for inspection. All 50 passengers, including Fulani, cooperated with the agents' requests. During the entire duration of the agents' investigation, the bus doors remained open and the aisle remained unobstructed. Thus, passengers were free to go on and off the bus. Fulani at no point during the investigation exited the bus.

Fulani was able to communicate with the agents in English even though his native language is Yoruba.[1] When Agent Paret asked him to produce his bus ticket, he produced a ticket that read "Fulani, Ibrahim." Agent Paret then asked him if he had any luggage, and Fulani pointed to a plastic shopping bag at his feet. Next, Agent Paret asked him if that was his only bag, and Fulani said it was. Agent Paret then specifically asked him if he had any luggage in the overhead rack, and Fulani gave a negative response.

After the agents finished questioning all of the passengers, they identified a suitcase that had been left unclaimed. This bag was located almost directly above Fulani's seat. Agent Aster retrieved it and held it over his head, asking all the passengers if anyone owned it. After 15 to 20 seconds elapsed without a response, Agent Aster removed the bag from the bus. He then noticed a Greyhound tag twisted around the bag's handle. When he flipped the tag over, he saw that the tag had a name on it. He brought the bag back onto the bus and again asked if anyone claimed it. Again, no one claimed the bag.

Agent Aster then removed the bag from the bus and, along with Agent Paret, searched it. Inside the bag they found five plastic bags suspected to contain heroin, a Nigerian passport

---

[1]At Fulani's suppression hearing, his counsel stated that Fulani speaks English and that he did not need an interpreter.

bearing Fulani's name and photograph, and a receipt for an airline ticket bearing Fulani's name. Agent Paret placed the bag in his car, and the agents reboarded the bus to try to find its owner. First, they spoke with two passengers seated across the aisle from Fulani and examined their bus tickets. Next, Agent Paret requested to see Fulani's bus ticket. When Fulani produced his ticket, the agents arrested him and removed him from the bus.

Subsequently, a grand jury indicted Fulani on a single charge of distribution and possession with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1). Fulani moved to suppress physical evidence alleging that the search of his bag violated the Fourth Amendment. On June 20, 2003, the district court conducted an evidentiary hearing on the motion and on August 21, 2003, filed a memorandum and order granting Fulani's motion. The United States timely filed a notice of appeal on September 18, 2003.

## II. DISCUSSION

### A. The Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Police officers' requests to search passengers on a bus do not violate the Fourth Amendment so long as "a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388 (1991) (finding error in Florida Supreme Court's per se ruling that every encounter on a bus in which consent from passengers to search their luggage is sought is a seizure). Moreover, police officers conducting a routine, suspicionless drug interdiction need not inform bus passengers that they have the right to refuse consent to searches. See United States v. Drayton, 536 U.S. 194, 207, 122 S.Ct. 2105, 2114 (2002).

### B. Abandonment

Although a person has a privacy interest in the contents of his personal luggage, see United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644 (1983), he forfeits that interest when he abandons his property. See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698 (1960) (an individual has no reasonable expectation of privacy in abandoned property). Abandonment for purposes of the Fourth Amendment differs from abandonment in property law; here the analysis examines the individual's reasonable expectation of privacy, not his property interest in the item. See United States v. Lewis, 921 F.2d 1294, 1302 (D.C. Cir. 1990). A court must determine from an objective viewpoint whether property has been

3

abandoned. See United States v. Perkins, 871 F. Supp. 801, 803 (M.D. Pa. 1995), aff'd, 91 F.3d 127 (3d Cir. 1996) (table); see also United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993). Proof of intent to abandon property must be established by clear and unequivocal evidence. See United States v. Moody, 485 F.2d 531, 534 (3d Cir. 1973).

## C. Fulani Abandoned His Overhead Bag

Following the Supreme Court's rulings in Bostick and Drayton, police officers may request to search bus passengers, even without notifying them of their right to refuse cooperation, so long as a reasonable person would have felt free to refuse cooperation. In Fulani's case, he was told that he had the right to refuse cooperation, but he nonetheless chose to cooperate. There is no evidence that a reasonable person in his position would not have felt free to refuse cooperation; in fact, the bus doors remained open and the aisle remained unobstructed during the entire investigation.

In choosing to cooperate with Agent Paret's questioning, Fulani told him that he had one plastic bag by his feet and no baggage in the overhead rack. Fulani had other choices. First, he could have said that he owned the overhead bag, thereby requiring the agents to obtain his consent to search it if they desired to do so.[2] Second, Fulani could have remained silent, and thus have avoided giving the agents a basis to search the bag. Instead, what Fulani did was disclaim ownership of every bag located in the overhead rack, including the one that bore his name on it. In so doing, Fulani abandoned ownership in his bag, effectively waiving his right to bar its search.

Fulani manifested his intent to abandon his overhead bag in a clear and unequivocal way. In addition to his express statement to Agent Paret that none of the baggage in the overhead rack belonged to him, after voluntarily cooperating Fulani implicitly denied ownership of the bag on two occasions when he remained silent in the face of Agent Aster's questioning directed to the entire bus. This silence was no mere passive failure to claim ownership, as the district court concluded in reliance on Stanberry v. Maryland, 684 A.2d 823 (Md. 1996).

We are satisfied that viewing the facts in their totality, Fulani's explicit denial of ownership of the bag (when he spoke to Agent Paret), coupled with his two implicit denials (when he remained

---

[2]Inasmuch as it does not appear that the agents sought to search any other bags we have no reason to believe that they would have sought a consent to search from Fulani if he originally had identified the bag.

4

silent in response to Agent Aster's bus-wide questioning), show Fulani's clear and unequivocal abandonment of his privacy interest in the overhead bag.[3] Thus, we hold that the district court erred in suppressing the bag and its contents. Accord United States v. Cofield, 272 F.3d 1303, 1307 (11th Cir. 2001) (abandonment resulted where in response to police officers' requests for permission to search two bags, defendant "removed the bags from his shoulders and put them on the ground, denied that the bags belonged to him, and attempted to walk away from the area"); United States v. Springer, 946 F.2d 1012, 1017 (2d Cir. 1991) (abandonment occurred where defendant stated that bag was not his and then consistently disclaimed ownership of it); Lewis, 921 F.2d at 1303 (abandonment occurred where defendant denied ownership of luggage in overhead rack).

Moreover, we disagree with the district court's ruling that once the agents discovered Fulani's nametag on the unclaimed luggage, that they no longer could infer that the luggage was abandoned. While the presence of a nametag on one's luggage may be an indicia of an expectation of privacy, the Fourth Amendment protects only a reasonable expectation of privacy, and after a passenger refuses to claim luggage with the nametag on three separate occasions after he cooperates at least in part with the agents, as Fulani did here, he no longer has a reasonable expectation of privacy in his luggage. We further reject Fulani's argument that he could not have abandoned his luggage without physically removing himself from it. The Fourth Amendment poses no such requirement; it merely asks whether the defendant has made a clear and equivocal manifestation of his intent to abandon his property.

Finally, there is no evidence of any police misconduct in this case that might render Fulani's abandonment involuntary. See Lewis, 921 F.2d at 1302-03 (abandonment may be involuntary, and thus invalid, where it results directly from police misconduct, such as an illegal search or seizure,

---

[3]We reject the district court's suggestion that in order for Fulani's denial to have constituted an abandonment, Fulani would have needed to disclaim the bag expressly after the agents discovered the nametag. We see no reason to impose this requirement where Fulani already had said that none of the overhead bags belonged to him. In fact, we think it very unwise -- and potentially catastrophic -- to require that each bus passenger be polled as to whether he denies ownership of an unaccounted for bag. The implications of such a ruling in the event that such a bag contains a time-sensitive explosive device are hardly thinkable. Indeed, in considering this case one might wonder whether the agents would not have been remiss had they not searched the bag after no passenger would claim it.

deceit, or, perhaps, a pattern of harassment). In this case the agents advised all the passengers, including Fulani, of their right not to cooperate; they left the bus doors open; and they left the aisle unobstructed. Thus, there was no evidence of a confining atmosphere that might have rendered Fulani's abandonment involuntary. See, e.g., United States v. McDonald, 100 F.3d 1320, 1327-29 (7th Cir. 1997) (rejecting argument that confining atmosphere on bus due to the presence of three police officers rendered abandonment invalid).

## III. CONCLUSION

In sum, we hold that Fulani abandoned his privacy interest in his overhead bag, and accordingly the agents' search of that bag did not violate his Fourth Amendment rights. Thus, we will reverse the order of the district court entered August 21, 2003, and will remand the case to the district court for further proceedings.