

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2004

# USA v. Gordon

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3639

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Gordon" (2004). *2004 Decisions.* Paper 403.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/403

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3639

———————

———————UNITED STATES OF AMERICA

v.

RODNEY GORDON
a/k/a Kevin Jones

Rodney Gordon,

Appellant

———————

———————On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 02-cr-00227)
Honorable James M. Munley, District Judge

———————

Argued June 25, 2004

BEFORE: AMBRO, BECKER, and GREENBERG, Circuit Judges

———————(Filed: August 10, 2004)

———————

James V. Wade
Federal Public Defender
Middle District of Pennsylvania
Daniel I. Seigel
100 Chestnut St., Suite 306
Harrisburg, PA 17108
Patrick A. Casey (argued)
Assistant Federal Public Defender

Kane Professional Building, Suite 2C
116 North Washington Avenue
Scranton, PA 18503-1800

<u>Attorneys for Appellant</u>

Thomas A. Marino
United States Attorney
Middle District of Pennsylvania
George J. Rocktashel (argued)
Assistant United States Attorney
Herman T. Schneebeli Building
240 West Third Street, Suite 316
Williamsport, PA 17701-6465

<u>Attorneys for Appellee</u>

OPINION OF THE COURT

GREENBERG, <u>Circuit</u> <u>Judge</u>.

This matter comes on before the court on Rodney Gordon's appeal from a judgment of conviction and sentence entered in the district court on September 2, 2003, following his conviction at a jury trial in this cocaine distribution and possession case. Gordon, however, challenges only the district court's order entered April 22, 2003, denying his motion to suppress evidence. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's order for clear error as to underlying facts, but exercise plenary review as to its conclusions of law. <u>See</u> <u>United States v. Fulani</u>, 368 F.3d 351, 352 (3d Cir. 2004). For the reasons stated herein, we will affirm the judgment of conviction and sentence.

2

The following is what happened. On August 13, 2002, Gordon traveled from Philadelphia, Pennsylvania, on a Susquehanna Lines bus. When the bus made a regularly-scheduled stop in Lehighton, Pennsylvania, Gordon transferred to another bus, which was en route to Williamsport, Pennsylvania.

Special Agents Jeffrey P. Aster and Ronald Paret of the Pennsylvania Attorney General's Bureau of Narcotics Investigation, along with Lehighton Police Chief Wentz, were stationed at the bus stop. Agents Aster and Paret saw Gordon make the bus transfer and at that time saw that he was carrying a black duffle bag. Chief Wentz noticed that Gordon was watching him in an intense manner.

Agents Aster and Paret boarded the Williamsport bus and, with the bus driver's permission, Agent Paret announced over the public address system that he and Agent Aster were conducting a brief drug investigation. He informed the passengers that their cooperation was appreciated but not required. Chief Wentz remained at the front of the bus, but did not seal off the door. During the entire investigation, the door and aisle remained open for passengers to enter and exit the bus.

Agents Aster and Paret approached Gordon and asked to see his bus ticket which Gordon then produced. The agents then asked him if he had luggage with him, and Gordon identified the black carry-on duffle bag as his luggage. The agents then asked if they could search the bag, and Gordon consented. Inside the bag, the agents discovered hundreds of empty plastic bags in assorted colors. Based on their prior experience and

3

training, they recognized the bags as being of a type commonly used to package controlled substances. Agent Paret then asked Gordon to identify himself. Gordon said that his name was Nathaniel Thompson from Philadelphia, and that he was headed to Williamsport. When asked if he previously had been arrested, Gordon said he had been arrested for weapons violations.

Understandably the agents then conducted a pat-down search of Gordon for weapons. During the search agent Aster felt a hard mass in Gordon's sweatshirt pocket, which he immediately recognized through feel as controlled substances. He testified as follows:

> And for our safety and safety of the other passengers involved, we conducted a very quick Terry pat down on the bus. And as I was feeling the right side part of his red sweatshirt, which is to my right side here, I noticed that there was something hanging in the pocket, it was an open pocket, I could see it, and then – as I bumped it I could feel it, and as I put my hand around it it was like a semi-round mass, hard mass that I felt. And I was very confident through my experience that this was consistent with cocaine or other powder type drug that had been wrapped very tightly in a ball.

A. 118. Agent Aster then arrested Gordon and reached into his pocket and retrieved a clear plastic bag containing other smaller individual bags of a tightly wrapped white substance, which appeared to be cocaine.

On September 12, 2002, a grand jury indicted Gordon for distribution and possession with intent to distribute approximately 30 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). On November 12, 2002, he moved to suppress evidence, arguing that the agents searched his carry-on bag without consent, Agent Aster's pat-down search

4

exceeded its permissible scope, certain of Gordon's statements should be suppressed, and his rights had been violated because he had been targeted due to racial profiling. The district court denied Gordon's motion in its entirety. With reference to the pat-down search to the extent that it led to the seizure of the cocaine, the validity of which is the only issue Gordon raises on appeal, the district court found that it was immediately apparent to Agent Aster when he patted down Gordon's sweatshirt that the item he felt was not a weapon but was drugs. Specifically, the court found that Agent Aster

> did manipulate the object but only enough to determine it was not a weapon, and immediately upon realizing it was not a weapon, he concluded that it was drugs. The record indicates that no extraneous manipulation of the object occurred after the investigator determined that it was not a weapon. Accordingly, the evidence will not be suppressed.

A. 11.

Gordon's case proceeded to trial, and on May 30, 2003, a jury returned a guilty verdict. On September 2, 2003, the district court entered a judgment of conviction and a sentence of 262 months of imprisonment to be followed by a six-year term of supervised release. Gordon then timely appealed.

The sole issue on this appeal is whether the district court clearly erred in finding that Agent Aster handled the object in Gordon's sweatshirt merely to determine that it was not a weapon, and at the moment he made that determination, he also determined that the object was drugs.

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that

5

"the police can stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585 (1989) (citing Terry, 392 U.S. 1, 30, 88 S.Ct. 1884-85)). In this case, Gordon does not contend that the agents lacked reasonable suspicion to conduct a pat-down search for weapons. Rather, he argues that under Minnesota v. Dickerson, 508 U.S. 369, 113 S.Ct. 2130 (1993), Agent Aster's pat-down search exceeded the permissible scope of Terry. In Dickerson, the Supreme Court clarified that:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Id. at 375-76, 113 S.Ct. at 2137.

Our review of the record leads us to conclude that the district court did not clearly err in finding that Agent Aster handled the object in Gordon's pocket just enough to determine it was not a weapon, and that immediately upon reaching that conclusion, he also concluded that the object was drugs. After all, Agent Aster testified that that is exactly what happened. Therefore, the only way we could reverse here would be to hold that the district court should not have believed the agent but we have no reason to reach such a conclusion. Thus, this case is distinguishable from Dickerson, where the incriminating nature of the object was not immediately apparent to the officer, and he

6

determined the object was contraband only after conducting a further search <u>Terry</u> did not authorize.  <u>See</u> <u>Dickerson</u>, <u>id</u>. at 379, 113 S.Ct. at 2139.

For the reasons stated above, the judgment of conviction and sentence entered September 2, 2003, will be affirmed.


**AMBRO**, Circuit Judge, <u>Concurring</u>:

Based on Agent Aster's testimony, the District Court concluded that he handled the object in Gordon's pocket just enough to determine it was not a weapon.  The majority is correct that we have little basis on appeal to hold the District Court should have disregarded the agent's testimony.  Therefore, I cannot say the District Court's finding was clearly erroneous.  I write separately, however, to briefly express two concerns.

First, the facts of this case could be construed as very similar to the events in <u>Minnesota v. Dickerson</u>, 508 U.S. 366 (1993), in which evidence of drug possession was suppressed.  Agent Aster testified that he could see a round bulge in Gordon's pocket about the size of a tennis ball.  Yet Agent Aster neither specified what weapon he thought the round object could be nor identified any reason that caused him to suspect the object was a weapon.  Agent Aster also testified: "I basically tapped [the object], and kind of manipulated [it] with my fingers a little bit before I grasped the object and placed a squeeze upon it."  App. at 140.  Only after squeezing the object did Agent Aster

determine it was contraband. This situation is similar to <u>Dickerson</u>, which also involved an initial frisk or patdown, followed by more significant tactile exploration. The officer there testified: "[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane." 508 U.S. at 369.

This case also demonstrates that the distinctions <u>Dickerson</u> requires courts to make are often ethereal. Are the Fourth Amendment implications different if an officer merely pats down an individual's outer clothing versus if an officer pats and then squeezes an object in the individual's coat pocket? Is a squeeze different from manipulating an object? If so, is squeezing more or less invasive? Is some squeezing permissible but too much squeezing not? These and similar questions judges ask to decide cases of this kind connote less the lore of law than a bad <u>Seinfeld</u> episode.