**Bobby BURKS, Petitioner**

v.

**UNITED STATES of America, Respondent.**

Civil No. 05–CV–2599.
Criminal No. 02–CR–754–02.

United States District Court,
E.D. Pennsylvania.

Sept. 11, 2006.

Bobby Burks, Pro se.

Richard P. Barrett, Cedric D. Bullock, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

agreement about the timing of costs and fee submissions.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

Before the Court is Petitioner Bobby Burks's habeas corpus motion under 28 U.S.C. § 2255. The sole issue alleged is ineffective assistance of trial counsel for failing to file a direct appeal of Petitioner's conviction and sentence. The Court addresses this issue below.

## I. Factual Background

While traveling by bus from Phoenix, Arizona, to Philadelphia, Pennsylvania, Petitioner was arrested in Albuquerque, New Mexico, during a routine investigatory stop. Law enforcement officers approached the bus and, with consent, conducted a sweep of the vehicle for illegal drugs. During the sweep, officers found a suitcase in the bus's lower luggage compartment that bore the strong odor of dryer sheets, which the officers recognized as a tactic commonly used by drug traffickers to conceal the odor of narcotics. When no passenger claimed ownership of the suitcase, the officers searched it and discovered thirteen kilograms of cocaine. Soon after, the officers determined that the suitcase belonged to Petitioner.

On August 29, 2003, Petitioner was convicted of one count of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846.[1] On June 3, 2004, this Court sentenced Petitioner to a 130–month term of imprisonment, five years of supervised release, and imposed a $5,000 fine. Petitioner did not file a direct appeal.

Rather, on May 31, 2005, Petitioner filed the instant habeas corpus motion arguing that his trial counsel was ineffective for: (1) being unprepared for the hearing held on Petitioner's motion to suppress evidence; (2) failing to call any witnesses at the suppression hearing; (3) failing to submit a legal memorandum in support of the arguments counsel made during the suppression hearing; (4) failing to attempt to negotiate a plea agreement with the government; and (5) failing to seek an appeal after Petitioner's sentence.[2] On May 25, 2006, the Court held a hearing on Petitioner's habeas corpus motion where he was represented by newly appointed counsel. Petitioner informed the Court that he had abandoned all of the arguments in his habeas corpus motion except one: his claim that trial counsel was ineffective for failing to file a direct appeal on his behalf.[3] Accordingly, the only relief Petitioner now seeks is reinstatement of his appellate rights *nunc pro tunc*.[4] All other issues are considered waived.

## II. Discussion

The U.S. Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process" that a "just result" was not achieved.[5] Petitioner is entitled to the relief he seeks only if he makes the two-part showing established in *Strickland*: " '(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result would have

---

1. Doc. # 73.

2. Habeas Corpus Mot. 2–4.

3. N.T. 5/25/2006, at 4–5.

4. *Id.* at 5.

5. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

been different.' " [6] Where the alleged ineffectiveness is counsel's failure to file an appeal, a petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure ..., he would have timely appealed." [7]

Petitioner contends that trial counsel failed to follow his express instruction to file a direct appeal after the Court imposed a judgment of sentence against him. Petitioner testified at the May 25th hearing that, during a private conversation with his attorney during trial, he instructed his attorney to file an appeal should he be convicted.[8] Additionally, Petitioner testified that he assumed, based on their conversation, that his attorney had filed an appeal on his behalf after his trial ended.[9]

The government contends that Petitioner's trial attorney, Christopher D. Warren, properly consulted his client about filing an appeal, and that Petitioner chose not to appeal. The government asserts that immediately following sentencing Petitioner and Warren discussed the subject of an appeal, and that during that conversation Petitioner stated that he did not want to appeal. At the May 25th hearing, Warren testified that after sentencing, he told Petitioner that he had a right to appeal. During that conversation, Warren also advised Petitioner that an appeal would likely fail. Warren explained that he told Petitioner that the only potentially appealable issue was the Court's denial of his motion to suppress evidence. However, Warren further explained that the Third Circuit's decision in *United States v. Fulani*, issued just before Petitioner's sentencing, precluded him from making a good-faith argument that the motion to suppress had been improperly denied.[10]

Moreover, Warren testified that during their conversation Petitioner informed him that he was satisfied with his sentence, and that he did not wish to appeal.[11] Thereafter, Warren sent Petitioner a copy of the *Fulani* decision and, in an accompanying letter, stated: "Based upon our discussion after sentencing on Thursday, I will not be filing an appeal in your case. If you change your mind for any reason, I have to know by June 13, 2004 because that is the date that the time for appealing your conviction and sentence expires." [12] Warren did not receive a response.

Petitioner also testified at the May 25th hearing that he did not recall receiving Warren's letter.[13] Further, he testified

---

**6.** *Rolan v. Vaughn*, 445 F.3d 671, 681 (3d Cir.2006) (quoting *United States v. Nino*, 878 F.2d 101, 103 (3d Cir.1989)).

**7.** *Roe v. Flores–Ortega*, 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

**8.** N.T. 5/25/2006, at 34. Petitioner was unable to recall significant details about this conversation. However, he recalled that the conversation where he directed his attorney to file an appeal occurred in the first few days of his trial after the government began making a strong case against Petitioner and that the conversation took place on Market Street directly in front of the courthouse.

**9.** *Id.*

**10.** *Id.* The facts of *Fulani*, 368 F.3d 351, 352 (3d Cir.2004), are similar to the facts in the instant case. In *Fulani*, the Third Circuit upheld the search of an unclaimed suitcase during a routine and otherwise permissible sweep of a bus for illegal narcotics. The court reasoned that the defendant had abandoned the suitcase by repeatedly denying that he owned it, and, therefore, had no reasonable expectation of privacy in it. Similarly, Petitioner expressly denied owning the suitcase in which the eleven cocaine bricks were later discovered.

**11.** N.T. 5/25/ 2006, at 19–20.

**12.** Gov't's Resp. Mem. to Habeas Corpus Mot. Ex. A.

**13.** N.T. 5/25/ 2006, at 38.

that he did not recall engaging in a conversation with Warren where he stated that he did not want to appeal his conviction and sentence.[14] Curiously, however, Petitioner did acknowledge that he told Warren during a conversation held at some point after his sentencing that he was happy with his sentence, and that he did not wish to appeal.[15]

■ In evaluating Petitioner's ineffective-assistance claim, it is the conduct of counsel, not Petitioner, which must be judged against "an objective standard of reasonableness."[16] Accordingly, the Court must determine if, "in light of all the circumstances," counsel's omissions lie "outside the wide range of professionally competent assistance."[17] Because Petitioner does not seriously allege that Warren failed to counsel him on the subject of an appeal, the Court's inquiry is straightforward: "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."[18]

■ Having considered all of the circumstances surrounding the decision not to appeal, the Court concludes that counsel did not fail to follow Petitioner's express instruction with respect to an appeal. Although Petitioner's allegation that he instructed Warren during his trial to file an appeal if he was convicted must be accorded considerable weight,[19] the Court cannot

turn a blind eye to the fact that after sentencing, when discussion of his appeal took on new importance, Petitioner told his attorney that he did not wish to appeal. Retraction of his stated desire to appeal the conviction and sentence was enough for Warren to reasonably conclude that he was not expected—let alone duty-bound—to file an appeal. Moreover, if a scintilla of doubt remained concerning whether Petitioner did or did not desire to seek an appeal, that doubt was allayed when Petitioner failed to respond to Warren's letter inviting Petitioner to inform him whether or not he persisted in his decision not to appeal. The Court, therefore, cannot conclude that Warren failed to follow Petitioner's instructions; to the contrary, Warren appears to have done exactly what was requested of him at the time.

■ Petitioner did not press the issue at the hearing, but Warren lamented that if he had filed a timely notice of appeal, Petitioner's appeal would have been pending when the U.S. Supreme Court issued its decision in *Blakely v. Washington.*[20] Accordingly, Warren conjectured that Petitioner's guideline sentence might have been ripe for reconsideration in light of *Blakely* or the Supreme Court's subsequent decision in *United States v. Booker.*[21] Instead, Petitioner's conviction became final just days before *Blakely* was decided, denying him the benefit of the new law it established. "[A]s there is no

---

14. *Id.* at 45–50.

15. *Id.* at 46.

16. *Rolan*, 445 F.3d at 681.

17. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

18. *Flores–Ortega*, 528 U.S. at 478, 120 S.Ct. 1029 (2000).

19. *Solis v. United States*, 252 F.3d 289, 294 (3d Cir.2001) (noting that an allegation that

counsel failed to file an appeal as instructed raises a question of fact, and directing the court to undertake a credibility determination to resolve any factual disputes).

20. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

21. 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

general duty on the part of defense counsel to anticipate changes in the law," however, Warren's failure to prognosticate was not "unreasonable under prevailing professional standards," [22] and cannot be deemed ineffectiveness.

Finding that Petitioner has failed to establish an objectively unreasonable omission on the part of his trial counsel, the Court need not consider the second prong of the *Strickland* analysis. Nonetheless, the Court has been given no reason to believe that had Petitioner so directed, counsel would not have filed a timely direct appeal.

### III. Conclusion

For the foregoing reasons, the Court denies Petitioner's habeas corpus motion.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 11th day of September 2006, upon consideration of Petitioner Bobby Burks's Petition for Writ of Habeas Corpus, and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED.**

It is further **ORDERED** that the Clerk of the Court shall mark this case **CLOSED** for statistical purposes.

---

**22.** *Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989).