**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1634
_____

UNITED STATES OF AMERICA

v.

EDWIN THOMAS,

Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 09-cr-147)
District Judge: Honorable Susan D. Wigenton

_____

Submitted Under Third Circuit LAR 34.1(a)
March 10, 2011

Before: SCIRICA, AMBRO AND VANASKIE, *Circuit Judges*

(Filed April 12, 2011 )

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

After his motion to suppress the evidence was denied, a jury found Appellant

Edwin Thomas ("Thomas") guilty of a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1). Thomas appeals, asserting that the District Court erroneously denied his suppression motion as well as two mistrial motions, and that the prosecutors engaged in misconduct. For the following reasons, we will affirm the Judgment of the District Court.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we will set forth only those facts necessary to our analysis.

On November 14, 2008, at approximately 9:00 p.m., Newark, New Jersey Police Department Detectives Modesto Miranda and Edward Vernotica patrolled a public housing neighborhood in a white, unmarked police vehicle. Both detectives were twenty-five-year veterans of the police force. They knew that the neighborhood, which included 30 Ridgewood Avenue, was a high crime rate area where frequent drug dealings and shootings occurred. The detectives turned into 30 Ridgewood Avenue which led to a backyard parking lot. It was a misty, dark night, but street lights provided some illumination of the area, where three to four pre-teenage children played.

As their car approached the parking lot, someone yelled "5-0." Approximately twenty feet or less away, the detectives saw Thomas. He dropped a duffel bag to the ground, and walked towards the detectives. At that point, the detectives stopped and exited the vehicle. The detectives, in plain clothes with their police badges hanging from their necks, told Thomas to put his hands on the hood of the vehicle. After he failed to produce any identification, Thomas was patted down and placed in the back seat of the vehicle.

Detective Miranda proceeded to position the vehicle so its headlights shined upon the duffel bag. Again, both detectives exited the vehicle. As the bag lay undisturbed, Detective Miranda observed the handle of a gun sticking out of the duffel bag. Consequently, Detective Miranda immediately alerted Detective Vernotica to arrest Thomas, and Detective Vernotica handcuffed Thomas and placed him under arrest.

Detective Miranda continued his investigation by shining his flashlight on the open portion of the duffel bag, where he observed another gun. When the duffel bag was eventually opened by police officers from the Crime Scene Unit, they recovered a Romarm Cugir 7.62 millimeter semi-automatic rifle and an Armscor Philippines Model 1600 .22 caliber semi-automatic long rifle.

On June 8, 2009, counsel for Thomas filed a pre-trial motion asserting that Thomas's stop and arrest violated the Fourth Amendment. In the afternoon of October 14, 2009, the day before the hearing on Thomas's motion to suppress, the government faxed a letter to defense counsel summarizing materials it was required to produce under *Giglio v. United States*, 405 U.S. 150 (1972). At the October 15, 2011 suppression hearing, however, the District Court Judge, who had previously reviewed the *Giglio* materials *in camera*, explained that the government failed to comply with the spirit and intent of her order. The government was supposed to have produced the actual materials, rather than a summary of the facts, to defense counsel. The court again ordered the government to produce the appropriate *Giglio* materials, and the hearing on the suppression motion was postponed.

On the night of October 15, 2009, the government produced the *Giglio* materials, and the suppression hearing was held on October 19, 2009. With respect to the two firearms, the District Court, ruling from the bench, denied Thomas's motion to suppress the evidence. The District Court found that there was reasonable suspicion to stop Thomas, and that he had abandoned his duffel bag containing the two rifles. (J.A. 321-22.)

Subsequently, on November 9, 2009, Thomas's jury trial commenced. During the trial, defense counsel moved for a mistrial on two occasions. First, after a prosecutor referred to Thomas's counsel as a public defender while cross-examining a defense witness, counsel for Thomas moved for a mistrial. The District Court denied the motion and provided a curative instruction to the jury. Defense counsel's second motion was made after the government delivered its rebuttal closing argument. The District Court also denied this motion for a mistrial. On November 13, 2009, the jury found Thomas guilty. On February 22, 2010, he was sentenced to eighty-five months' imprisonment, which was within the advisory guidelines range of seventy to eight-seven months. This timely appealed followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

On appeal, Thomas challenges the denial of his motion to suppress the two rifles and his mistrial motions based upon purported prosecutorial misconduct. Generally, the

4

Fourth Amendment prohibits "unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Thomas's suppression motion, presented in the context of a brief encounter between Thomas and Detectives Miranda and Vernotica, is governed by the analysis announced in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).[1] In *Terry*, the Supreme Court observed that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. Thus, pursuant to *Terry*, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Wardlow*, 528 U.S. at 123. Indeed, the "Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

We "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about

---

[1] We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings, and exercise plenary review of the District Court's application of the law to those facts. *United States v. King*, 604 F.3d 125, 134 (3d Cir. 2010).

5

the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (quoting *Cortez*, 449 U.S. at 418). Relevant contextual considerations in a *Terry* analysis include a "high crime area[,]" *Adams*, 407 U.S. at 144, "nervous, evasive behavior[,]" *Wardlow*, 528 U.S. at 124, as well as "commonsense judgments and inferences about human behavior." *Id.* at 125.

Here, Thomas first argues that he was arrested when the detectives placed his hands on the hood of the unmarked police vehicle, patted him down, and placed him in the backseat. "[G]ood police work[,]" however, may require "an intermediate response" short of an arrest, such as a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, [which] may be most reasonable in light of the facts known to the officer at the time." *Adams*, 407 U.S. at 145-46. That is precisely what occurred here. The detectives asked Thomas for identification, but he was unable to produce any. Thus, Thomas was placed in the back seat of the vehicle so the detectives could verify who he was, determine if there were any outstanding arrest warrants issued against him, and assess the situation pertaining to the dropped duffel bag. Accordingly, Thomas's argument is unpersuasive.

Thomas also argues that there was no reasonable suspicion to stop him because his actions were not indicative of criminal behavior. This Court has "acknowledged, however, that reasonable suspicion does not require that the suspect's acts must always be themselves criminal." *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000) ("In many cases the Supreme Court has found reasonable suspicion based on acts capable

6

of innocent explanation."). The District Court properly found that Detectives Miranda and Vernotica had reasonable suspicion to conduct a *Terry* stop.

The facts, in pertinent part, are undisputed. The encounter between Thomas and the detectives occurred in a high crime area, which was the site of frequent drug dealing and shootings. Further, approximately one month before Thomas's encounter, a homicide had taken place in the same neighborhood. The detectives were familiar with the area and that it was a high crime rate area. Additionally, it was nighttime, and Thomas dropped the duffel bag when he was alerted that the police were in the vicinity and he saw the detectives' vehicle approaching. Although three to four pre-teenage children were playing in the general location of the parking lot, no one was specifically in the grassy area where Thomas dropped his duffel bag.

Therefore, viewed in their totality, the facts provide the requisite "minimal level of objective justification for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted). Indeed, "we think that if the [detectives] had done nothing and continued on their way after [witnessing Thomas drop the duffel bag], the [detectives] would have been remiss." *Valentine*, 232 F.3d at 356. Accordingly, the detectives had sufficient reasonable suspicion to effectuate a *Terry* stop.

Further, the District Court correctly concluded that Thomas abandoned the duffel bag containing the rifles, thereby justifying the search of its contents. "Although a person has a privacy interest in the contents of his personal luggage, he forfeits that interest when he abandons his property." *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004) (citation omitted); *see Abel v. United States*, 362 U.S. 217, 241 (1960) (explaining

7

that an individual has no reasonable expectation of privacy in abandoned property). Abandonment analysis under the Fourth Amendment focuses on an individual's reasonable expectation of privacy. *Fulani*, 368 F.3d at 354. We "must determine from an objective viewpoint whether [Thomas's duffel bag] has been abandoned." *Id.* Finally, proof of Thomas's intent to abandon his property must be established by clear and unequivocal evidence, *id.*, which "may be inferred from 'words spoken, acts done, and other objective facts.'" *United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)).

Thomas dropped the duffel bag in a grassy area in the parking lot located behind housing units, then walked away. Any individual in the area would have had access to the duffel bag. Therefore, we can infer that Thomas had no reasonable expectation of privacy in the bag. *See United States v. Dickens*, 695 F.2d 765, 778 (3d Cir. 1982) ("Expecting privacy in a building staircase accessible to other tenants and the general public [where police officers discovered weapons in a plastic bag] cannot be considered reasonable."), *abrogated on other grounds as recognized by In re Grand Jury Empaneling of Special Grand Jury*, 171 F.3d 826, 828 (3d Cir. 1999). Additionally, because Thomas dropped the duffel bag and walked away from it before he was stopped by the detectives, he is foreclosed from arguing that the abandonment was "precipitated by an unlawful seizure," thus mandating its exclusion. *United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993). Accordingly, the District Court did not err in denying Thomas's suppression motion, nor in determining that he abandoned the duffel bag.

8

B.

Thomas challenges the denial of mistrial motions that were premised upon alleged prosecutorial misconduct. He also claims prosecutorial misconduct in connection with the delay in providing *Giglio* materials.

As we explained in *United States v. Morena,* 547 F.3d 191, 193-94 (3d Cir. 2008):

> Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002). The test for prosecutorial misconduct is whether the conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" in light of the entire proceeding. *Id.* at 64 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In conducting this analysis, this Court assesses the prosecutor's improper actions, the weight of properly admitted evidence and any curative instructions given by the trial court. *Moore v. Morton*, 255 F.3d 95, 112-113 (3d Cir. 2001).

When contemporaneous objections of prosecutorial misconduct are asserted, we review the "District Court's ruling . . . for abuse of discretion." *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 176). "Any non-contemporaneous objections are subject to plain error review." *Id.*

Regardless of what standard of review we apply, we find that the government did not commit misconduct. First, the government's belated disclosure of the *Giglio* materials, albeit unjustified, does not rise to a level that warrants setting aside the conviction. In this regard, Thomas has not shown how he was prejudiced by the timing of the disclosure. Second, the government did not badger any defense witness, but instead engaged in an appropriate cross-examination. Third, although the government erred in referring to the fact that Thomas was represented by a public defender, the

9

District Court took adequate steps to remedy the situation by providing curative instructions. Finally, the government's rebuttal argument was not inappropriate. Accordingly, we fail to find any alleged prosecutorial misconduct sufficient to warrant a mistrial or setting aside the verdict on appeal.

III.

For the foregoing reasons, we will affirm the Judgment of the District Court.