# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1903

UNITED STATES OF AMERICA

v.

KENDRE CAIN,
Appellant

_____

Appeal from
United States District Court for the Western District of Pennsylvania
Judge Christy Criswell Wiegand
No. 2:24-cr-38

Before: Hardiman, Scirica, and Ambro, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a)  March 26, 2026
Decided Jun. 22, 2026
_____

NONPRECEDENTIAL OPINION[1]

AMBRO, *Circuit Judge*

On seeing police officers on the street, Kendre Cain took off running.  The officers pursued and detained him, then discovered a firearm nearby.  Surveillance video showed Cain tossing the firearm during his flight.  Cain moved to suppress the firearm and surveillance video; the District Court denied the motion.  For the following reasons, we affirm that denial.

_____

[1] This disposition is not an opinion of the full Court and, under Third Circuit I.O.P. 5.7, is not binding precedent.

# I

In January 2024, two Pittsburgh police detectives set out to execute an arrest warrant. As they searched for their target, they spotted Kendre Cain entering a gray Jeep. Mistaking Cain for their target, the detectives followed him until he parked and got out of the Jeep. At that point, one detective recognized Cain and yelled his name. Cain immediately bolted, running down an outdoor stairwell and behind an apartment building. The detectives split up and pursued on foot.

One detective caught up to Cain, pointed his taser in Cain's direction, and shouted for him to stop and get on the ground. Cain complied, and the detective patted him down. During the pat-down, the detective asked Cain why he was running and told him they had pursued him because he had run. After detaining Cain, officers discovered a firearm nearby.

Surveillance video from the apartment building showed Cain running down the stairwell. During that flight, Cain reached into his pocket and tossed a small black object toward the alleyway where officers later confronted him. Cain does not dispute that the object was the firearm found near him.

Cain was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the firearm and the surveillance video. After a hearing and post-hearing briefing, the District Court denied the motion. Cain pled guilty conditionally, reserving his right to appeal the denial.

He now brings that appeal. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. "We review a district court's

2

order denying a motion to suppress under a mixed standard of review. We review findings of fact for clear error, but exercise plenary review over legal determinations." *United States v. Mendoza*, 163 F.4th 782, 784 (3d Cir. 2026) (quoting *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022) (citation omitted)). And because "the District Court denied the suppression motion," we examine the facts "in the light most favorable to the Government." *Id.* (quoting *Dyer*, 54 F.4th at 158).

Cain's primary argument is that his detention was unconstitutional. Regardless whether it was, the Government lawfully acquired the firearm and surveillance video.

## II

First, we address the firearm that Cain tossed as he ran. In order to suppress it under the Fourth Amendment, Cain must show more than his ownership. *Rawlings v. Kentucky*, 448 U.S. 98, 105–06 (1980). He must have a privacy interest in the firearm at the time it was seized. *Id.*

Abandonment of property terminates one's Fourth Amendment privacy interest in it. *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004). Under Fourth Amendment abandonment analysis—which is different from abandonment under property law—we ask whether, in the totality of the circumstances, there was "clear and unequivocal evidence" of intent to abandon. *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012) (citing *Fulani*, 368 F.3d at 354). This determination is objective; it does not turn on whether the defendant subjectively intended to abandon the property. *Id.* "In most cases, disclaiming ownership or physically relinquishing the property is sufficient to

establish abandonment." *Id.* (citing *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999)).

Accordingly, we have designated property "abandoned" where a bus passenger told agents he did not have any baggage in the overhead rack, even though there was a bag directly overhead bearing his name, *Fulani*, 368 F.3d at 354–55, and where a suspect "discarded eight packets into an unlighted pantry" during a "brief flight" from police through a kitchen, *United States v. Martin*, 386 F.2d 213, 214–15 (3d Cir. 1967). Of particular relevance to this case, the Supreme Court has held that where a fleeing suspect tosses an object moments before the seizure of his person, that object is (1) abandoned and (2) not fruit of the poisonous tree, because abandonment preceded the potentially unconstitutional detention. *California v. Hodari D.*, 499 U.S. 621, 628–29 (1991).[2]

This case fits neatly within *Hodari D.* and *Martin.* Cain tossed the firearm while running, so he abandoned it. And no matter whether his eventual detention was

---

[2] Cain contends the Supreme Court did not squarely hold the property abandoned in *Hodari D.*, citing its statement that "the only issue presented is whether, at the time he dropped the drugs, the defendant had been 'seized.'" 499 U.S. at 623. As the footnote accompanying that sentence explains, however, the Court used the word "only" to specify it was not deciding the issue whether any such seizure would have been constitutional; the State had conceded it would not be. *Id.* at 623 n.1. The Court took as uncontroversial that if the toss had preceded his seizure, "the drugs were abandoned by Hodari and lawfully recovered by the police." *Id.* at 624. It relied on *Hester v. United States*, 265 U.S. 57, 58 (1924), in which containers dropped by fleeing moonshiners were deemed abandoned. *Hodari D.*, 499 U.S. at 629.

4

constitutional, Cain relinquished his privacy interest in the firearm before he was detained, so it cannot be fruit of the poisonous tree.[3]

To resist this conclusion, Cain cites a single unpublished opinion from the Fifth Circuit to argue there is a difference between an intent to conceal something from law enforcement and "an intent to discard, leave behind, or otherwise disavow" one's privacy interest in it. *United States v. Ramirez*, 2023 WL 5925902, at *4 (5th Cir. May 10, 2023). As an initial matter, that case does not bind us. Further, its facts are easily distinguishable. In *Ramirez*, the defendant threw his jacket into the yard of his mother's house, where he had lived most of his life and still visited almost daily. *Id.* at *2. In holding he did not abandon the jacket, the panel reasoned he maintained a reasonable expectation of privacy in the place where he put it—"on the private side" of fenced-in "family property" where he was "welcome." *Id.* at *2–4. *Ramirez* specifically distinguished itself from a case where the suspect "drop[s] his jacket on the public sidewalk and r[uns] away." *Id.* at *2. That aligns with what Cain did here: he ran and tossed his firearm into a public alleyway, where he does not and cannot argue he had a reasonable expectation of privacy. Without that expectation, the District Court did not err in denying suppression.

### III

Nor did the District Court err in declining to suppress the surveillance video, even assuming for the sake of argument that Cain's detention was constitutionally defective.

---

[3] "An arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority." *Hodari D.*, 499 U.S. at 626 (emphases in original). Cain does not dispute that the toss occurred before he submitted to the arresting officer's assertion of authority.

First, Cain has no privacy interest in security footage of a public space. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). Additionally, the lawfully seized gun provided an independent basis for the police to seek footage of the nearby areas even if Cain had gotten away and the detention had never occurred. Accordingly, the footage derived from an "independent source" and is not subject to suppression. *See Murray v. United States*, 487 U.S. 533, 538–39, 542–43 (1988).

*   *   *   *   *

For these reasons, we affirm.