**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

v.

**BURMINGHAM, Andrew, Appellee.**

No. 85–3159.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1985.

Decided April 17, 1986.

J'Ada M. Finch-Sheen, Atty. Gen., Jacqueline A. Drew, (Argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellant.

John J. Mahon, (Argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.

Before HUNTER, GARTH, and BECKER, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

On this appeal, the Government as appellant argues that Andrew Burmingham, who had been charged with various criminal offenses under the Virgin Islands Code, had not been deprived of his right to a speedy trial, even though the Information charging him was filed in the Territorial Court on December 1, 1980 and some eighteen months later no trial had yet been had. The Territorial Court denied Burmingham's motion to dismiss the Information under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* and Federal Rule of Criminal Procedure 48(b). After a nonjury trial held in May, 1982, Burmingham was convicted on all four counts of the Information. On appeal to the district court this decision was reversed. We now vacate the order of the district court.

### I.

Appellee Andrew Burmingham was involved in a fight with one Selvin Joseph, in which Burmingham attacked Joseph with a machete. The only witness to this fight, aside from the two participants, was Ruth Joseph, formerly the girlfriend of Burmingham and now Selvin Joseph's wife. Both men were wounded and required hospital treatment. Burmingham was arrested on November 26, 1980. On December 1, 1980, the Government filed an Information in the Territorial Court. Burmingham was charged with three counts of third degree assault and one count of unlawful possession of a deadly weapon during the commission of a crime of violence, all in violation of Virgin Islands statutes. He was arraigned on December 9, and the case was subsequently set for trial on March 30, 1981.

On March 11, 1981, Burmingham moved for dismissal of the Information under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* and Fed.R.Crim.P. 48(b). The Territorial Court took Burmingham's motion for dismissal under advisement, along with other similar motions, in order to seek an *in banc* answer of that court to the question of whether the Speedy Trial Act was applicable to criminal proceedings in the Territorial Court. However, the Territorial Court never considered the question *in banc.*

Some thirteen months later, on April 16, 1982, the Territorial Court denied Burmingham's motion to dismiss the charges. Ironically, it was Burmingham's assertion of this purported statutory speedy trial claim that stretched the delay so that it exceeded eight months. LaFave & Israel, Criminal Procedure § 18.2, at 405 (quoting Joseph, *Speedy Trial Rights in Application,* 48 Fordham L.Rev. 611, 623 n. 71 (1980)).

In denying Burmingham's motion, the Territorial Court followed *Government of the Virgin Islands v. Albert John Quetel,* 18 V.I. 145 (Terr.Ct.1982), which held the Speedy Trial Act inapplicable to Territorial Court proceedings. The Territorial Court went on to hold that dismissal pursuant to Rule 48(b) was not warranted. Applying the constitutional speedy trial analysis of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct.

2182, 33 L.Ed.2d 101 (1972), the court concluded that:

> Although there has been excessive delay in bringing the defendant to trial, and the reason for the delay is chargeable mostly to the court, these factors are substantially outweighed by the fact that the delay was both necessary and justifiable, by the defendant's failure to assert his right to a speedy trial, and particularly by the fact that the defendant has not been prejudiced by the delay.

Following the denial of his speedy trial motion, on May 14, 1982, Burmingham was tried in a bench trial and was convicted on all four counts.

On appeal to the district court, Burmingham for the first time raised a Sixth Amendment claim, while also pressing his Rule 48(b) and Speedy Trial Act claims. The district court applied the test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, to Burmingham's constitutional claim. Unlike the Territorial Court, the district court concluded that Burmingham had been denied his right to a speedy trial. By its order of February 27, 1985, the district court vacated the judgment and conviction entered by the Territorial Court, and dismissed the Information filed against Burmingham.[1]

## II.

The Government contends that Burmingham, by not raising his Sixth Amendment claim at the trial level, has forfeited his right to do so now. This argument is supported by the *in banc* holding of this court that "it will not entertain arguments on appeal based on objections not timely raised below." *United States v. Gibbs*, 739 F.2d 838 (3d Cir.1984).

In *Gibbs*, this court held that a constitutional objection taken after both parties had rested at trial, and which raised issues different from the evidentiary (statutory) objection taken during trial, was not sufficient to preserve the later raised constitutional issue. Gibbs had objected to certain co-conspirator evidence at trial, referring to Federal Rule of Evidence 801(d)(2)(E) as the basis for his objection. No constitutional (Sixth Amendment) objection had ever been raised before the parties had rested. After testimony had closed and the parties had rested, and the court had refused to reconsider its evidentiary ruling, Gibbs for the first time made a general Sixth Amendment motion to strike the evidence. Gibbs had contended that the Government had the burden of proving the unavailability of a witness in order to adduce hearsay testimony from a co-conspirator.[2] This challenge too was denied by the district court.

On appeal to this court, we noted that issues different from the Rule 801 objection were raised by the Confrontation Clause objection. We also observed that the Government had not been given the opportunity to meet the objection—primarily, we observed that the Government could not at that stage satisfy the issue of witness availability. We did not reach the merits of Gibbs' argument, holding instead that the issue had not been preserved for appeal.

To the extent that both Gibbs and Burmingham first raised statutory objections and only thereafter raised constitutional objections, it would appear, at least on the surface, that no distinction could be drawn between the two cases. In such a situation, *Gibbs* obviously would control and we would be compelled to hold that Burmingham, by failing to raise his constitutional objection before the Territorial Court, came within the *Gibbs* doctrine and had not preserved a constitutional issue for review in this court.

**1.** The district court did not address the issue of the applicability of the Speedy Trial Act, nor did Burmingham raise it on appeal before us. We therefore do not address that issue here.

**2.** We observe that the Supreme Court has recently decided that the Confrontation Clause does not require a showing of unavailability as a condition to admission of the out-of-court statements of a non-testifying co-conspirator. *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

■ However, there are two significant differences between *Gibbs* and *Burmingham*. First, whereas in *Gibbs* the constitutional objection could have been taken at the same time as the evidentiary objection (thereby affording the Government time to respond to the claimed deficiency in proof), here Burmingham, at the time he made his motion under the Speedy Trial Act and Rule 48(b), could not legitimately have raised a constitutional claim that his speedy trial right had been violated. Burmingham's motion before the Territorial Court was made less than five months after his arrest and indictment. A delay of that length is not sufficiently prejudicial to trigger a constitutional inquiry. *See* La Fave & Israel, Criminal Procedure § 18.2, at 405. Our research has disclosed no case which we find persuasive that has held a delay of less than five months to constitute a violation of the constitutional right to a speedy trial.

Second, while concededly Burmingham did not, and we believe could not, have raised a constitutional challenge before the Territorial Court, his contention that the indictment should be dismissed under Rule 48(b)[3] led the Territorial Court to engage in the same analysis to resolve that issue as it would have been obliged to engage in had the constitutional claim been presented to it.[4] The Territorial Court in *Burmingham* did in fact employ the same analysis in a statutory context that it would have employed in the constitutional context. Thus, the Government was not, and could not have been, prejudiced by the failure of Burmingham to specifically delineate the constitutional claim under which he subsequently proceeded. This was not the case

in *Gibbs*, where the statutory analysis differed substantially from the Sixth Amendment, thus resulting in prejudice to the Government. We are satisfied, therefore, that *Gibbs* does not control the preservation issue raised by the Government in this case.

Accordingly, we proceed to the merits of the Government's argument that Burmingham's Sixth Amendment right to a speedy trial was not violated.

### III.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court adopted a balancing test to determine whether a delay in bringing a defendant to trial infringed upon his right to a speedy trial. That test, recently reaffirmed in *United States v. Loud Hawk*, —— U.S. ——, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), requires that we consider four factors: the length of the delay; the reason for the delay; defendant's assertion of the right;[5] and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192.

■ Prejudice is the key factor here, and its absence is decisive in this case. The Supreme Court has identified three interests of defendants that may be prejudiced by denial of the right to a speedy trial: preventing oppressive pretrial incarceration; minimizing anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193; *see also Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

---

3. Rule 48(b) provides as follows:
   **Rule 48. Dismissal**
   \*   \*   \*   \*   \*   \*
   (b) By Court. If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information of complaint.

4. In relevant part, Sixth Amendment provides as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed....
U.S. Const. amend. VI.

5. The government does not rest its argument on a failure by Burmingham to assert his right to a speedy trial.

In *United States v. Loud Hawk,* —— U.S. ——, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), the Court laid particular emphasis on the first of the three interests, stating that "the Speedy Trial Clause's core concern is impairment of liberty," *id.* 106 S.Ct. at 654, and pointing out that in that case, "despite the seriousness of the charged offenses, the District Court chose not to subject respondents to any actual restraints pending the outcome of the appeal," *id.* at 656–57. Similarly here, Burmingham was not incarcerated prior to his trial.

Nor is there evidence in the instant case of any unusual burden of anxiety. The district court, in its opinion holding that Burmingham had been denied his right to a speedy trial, referred to the anxiety of the accused as the only element of prejudice. Yet it recognized that Burmingham's anxiety was no greater than that which "inevitably attend[s] a criminal prosecution." A–7.[6]

Finally, there was no suggestion here that Burmingham's defense had been in any way impaired by the delay. Given that there were only two witnesses, and that those witnesses had good reason to remember the events in question, there is little likelihood of prejudice to Burmingham's defense.

In the absence of prejudice, we might nevertheless be inclined to look more favorably on Burmingham's claim if there were evidence that the government had "deliberately attempt[ed] to delay the trial in order to hamper the defense," *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, or even if the delay were in any way attributable to the prosecution. Here, responsibility for the delay rests with the Territorial Court. The initial three month delay was due to a crowded docket in the Territorial Court, and the subsequent delay was due to that court's attempt to reach a decision on the applicability of the Speedy Trial Act to the Territorial Court.

In *Loud Hawk,* the Supreme Court considered a delay similar in nature to that in the instant case. There, an interlocutory appeal by the government to the Court of Appeals for the Ninth Circuit, though expedited, consumed nearly two years. The Supreme Court noted that under *Barker* a delay from overcrowded courts should be weighed against the government, but less heavily than deliberate delay. The Court went on to observe that there had been "no showing of bad faith or dilatory purpose on the Government's part" *Loud Hawk,* 106 S.Ct. at 656, and gave little weight to the resulting delay.

The delay in the instant case was justified by the Territorial Court's desire to seek clarification of the law. Like the delay in *Loud Hawk,* it does not weigh strongly, if at all, against the government.

Absent impairment of the defense, pretrial incarceration, or any evidence of unusual psychological distress, and absent unjustifiable procrastination by the government, we do not believe that a delay of eighteen months between indictment and trial requires us to grant Burmingham's speedy trial claim predicated on *Barker v. Wingo.*

Accordingly, the judgment of the district court will be vacated and the case remanded with instructions to the district court to reinstate the judgment and sentence of the Territorial Court.[7]

---

**6.** This case is thus distinguishable from *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), in which we granted the speedy trial claim of Audrey Ellen Goldsmith. The time between indictment and trial in that case was two and a half years. Goldsmith provided evidence that she had experienced severe mental disturbance during that period.

**7.** The Territorial Court could have granted relief to Burmingham under Rule 48(b) even though such relief was not constitutionally required.

*See, e.g., United States v. Rich,* 589 F.2d 1025, 1034 (10th Cir.1978); *United States v. Cartano,* 420 F.2d 362, 363 (1st Cir.1969), *cert. denied,* 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970). However, it declined to do so. Instead, it applied the constitutional test of *Barker v. Wingo.* Under such a circumstance, our holding that the district court's constitutional analysis under the same test was flawed requires reinstatement of the Territorial Court's judgment.