**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1469
_____

UNITED STATES OF AMERICA

v.

GARNET SMALL,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cr-00381-001)
U.S. District Judge:  Honorable Mitchell S. Goldberg
_____

(Argued May 16, 2023)
_____

Before:  SHWARTZ, MONTGOMERY-REEVES, and ROTH, <u>Circuit Judges</u>.

(Filed: July 7, 2023)
_____

OPINION[*]
_____

Keith M. Donoghue [ARGUED]
Federal Community Defender Office for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

*Counsel for Appellant*

Jose R. Arteaga
Sara Solow [ARGUED]
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

SHWARTZ, Circuit Judge.

Garnet Small appeals the District Court's order denying his motion to suppress evidence found during a search and his sentence. Because Small does not have standing to object to the search and the delay in his sentencing did not violate due process, we will affirm.

I

A

Police Officers David Dohan and Lucas Lesko stopped a vehicle for having illegally tinted windows. Dohan approached the passenger side of the vehicle from behind and saw Small moving forward and back in the reflection in the passenger side mirror. Small's movements suggested to Dohan that he was attempting to put something underneath the passenger seat. Dohan noticed that Small was breathing rapidly, that his chest was "flutter[ing] back and forth," App. 88, and that his legs were not extended out into the footwell, but rather were very close to the seat. When Small responded to Dohan's question asking if he was "okay," his voice sounded "nervous" and "shaky,"

2

App. 88.  Dohan also saw Small attempt to push a black backpack underneath the passenger seat with his heels.

Dohan asked whether Small had a gun, to which Small replied, "I don't have a gun on me," App. 90, 117, 163, with emphasis on the word "on," App. 90, 163.  Dohan found this suspicious, and so he asked whether Small had a gun in the car, to which Small replied, "I don't know if a gun is in this car, but this is not my backpack," and pointed to the backpack he had tried to conceal, App. 163.

Dohan instructed Small to exit the car.  Small complied and walked with Lesko to the rear of the car.  Dohan reached into the car and picked up the backpack, which was "completely empty except for a single heavy object," App. 95, 120, which he believed was a firearm.  Dohan asked Small whether he had a permit to carry a gun, and Small said he did not.  Dohan opened the backpack and discovered a handgun.  Small was eventually charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Small moved to suppress the handgun.  The District Court denied Small's motion, finding that the stop was proper based on the police officers' observations of illegal window tinting, and that Small lacked Fourth Amendment standing to challenge the search because he "disavowed himself of any type of possessory ownership" of the backpack and thus relinquished his privacy interest in it, App. 162-63.

B

3

Small pleaded guilty on September 20, 2017.[1]  His initial sentencing hearing took place in December 2017, at which time the District Court heard argument concerning the applicability of the Armed Career Criminal Act ("ACCA") and adjourned to review the evolving ACCA caselaw.[2]  Before the next sentencing status hearing scheduled for March 2018, Small filed a brief again arguing that the ACCA did not apply and noting that United States v. Harris, Case No. 17-1861 (3d Cir.),[3] could impact his sentence.  As a result, the Court rescheduled the sentencing for May 2018.  Small's counsel thereafter asked to adjourn the sentencing three times pending a ruling in Harris.  By October 2019,

---

[1] Small's plea agreement precluded appeal except for, among other things, appeal of: (1) his sentence if the Government appealed the sentence; (2) a determination that he qualified for enhanced sentencing under the ACCA; and (3) the District Court's denial of the motion to suppress.

[2] The ACCA requires a minimum sentence of fifteen years where an individual convicted under 18 U.S.C. § 922(g) has three previous convictions for "a violent felony or a serious drug offense, or both."  18 U.S.C. § 924(e)(1).  The Government initially argued that the ACCA applied because Small had two serious drug offense convictions and two convictions that qualified as crimes of violence, namely a second-degree robbery conviction and a first-degree aggravated assault conviction.  United States v. Harris, Case No. 17-1861 (3d Cir.), presented the question of whether the Pennsylvania first-degree aggravated assault and second-degree robbery crimes qualify as "violent felonies" under the ACCA.  Harris was ultimately decided in May, 2023, and held that United States v. Mayo, 901 F.3d 918 (3d Cir. 2018), and its holding that Pennsylvania's first-degree aggravated assault did not qualify as a violent felony because it could be committed without force remained good law.  United States v. Harris, __ F4th __, 2023 WL 3494771 (3d Cir. May 17, 2023).  Harris did not address whether Pennsylvania's second-degree robbery qualified as a violent felony.  Id. at n. 7.

[3] Small explained that the District Court had declined at his first sentencing hearing to decide whether United States v. Voisine, 579 U.S. 686 (2016), impacted our law limiting the force clause of the ACCA to intentional crimes, because that question was being considered in United States v. Santiago, Case No. 16-4194 (3d Cir.).  In doing so, Small alerted the District Court that the question was also on appeal in Harris.

4

Harris, and a similar case, United States v. Santiago, Case No. 16-4194 (3d Cir.), had been set for review before the en banc Court.

In late October 2020, Small informed the District Court that he no longer wished to delay his sentencing pending a ruling in Harris and asked the Court to proceed with sentencing. The Court scheduled a sentencing hearing for December 2020, but it was postponed until January 2021 due to the COVID-19 pandemic. A remote sentencing hearing was then held in January 2021, where the Government asked the Court to adjourn the sentencing until the Supreme Court ruled in Borden v. United States, 141 S. Ct. 1817 (2021), which involved identifying the mens rea for qualifying ACCA offenses and which could therefore impact Small's sentence. The District Court agreed and continued sentencing pending a decision in Borden.

In June 2021, Borden was decided,[4] and Small alerted the Court of the decision a month later. In response, the Court scheduled Small's sentencing for October 2021, at which it decided to await a decision in Harris before sentencing Small.[5]

---

[4] The Borden Court held that crimes that can be committed with a mens rea of recklessness do not qualify as ACCA predicates. 141 S. Ct. at 1821-22.

[5] The Government conceded that under Borden, Small's robbery conviction did not qualify as a violent felony for purposes of the ACCA because it can be committed with a mens rea of recklessness. See 18 Pa. Cons. Stat. § 3701(a)(1)(iv) ("A person is guilty of robbery if, in the course of committing a theft, he . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury"); 18 Pa. Cons. Stat. § 302(c) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."). However, the Government continued to assert that Small's aggravated assault conviction under 18 Pa. Cons. Stat. § 2702(a)(1) qualifies as a violent felony under the ACCA because it is subject to a mens rea of "extreme recklessness" rather than "ordinary recklessness," and

5

In February 2022, Small submitted a letter pro se seeking new counsel and stating that he understood that his sentencing had been delayed for a ruling in <u>Borden</u> and reminding the Court that <u>Borden</u> had been decided. In response, on March 10, 2022, the Court convened a sentencing hearing, held that the ACCA did not apply, and sentenced Small to 120 months' imprisonment and three years' supervised release.

Small appeals the suppression ruling and asserts that he should receive a sentence reduction due to the delay in his sentencing. We address each issue in turn.

## II[6]

### A[7]

A defendant moving to suppress evidence bears the burden of showing that his Fourth Amendment interest in being free from an "unreasonable search[] and seizure[]," U.S. Const. amend. IV, was infringed by an invasion of his legitimate expectation of privacy in the property searched.[8] <u>United States v. Stearn</u>, 597 F.3d 540, 551 (3d Cir. 2010); <u>Byrd v. United States</u>, 138 S. Ct. 1518, 1528 (2018).

---

<u>Borden</u> addressed only the latter. App. 380-81. We held in <u>United States v. Mayo</u>, 901 F.3d 218, 229-30 (3d Cir. 2018), that § 2701(a)(1)'s aggravated assault crime does not qualify as a violent felony under the ACCA, but the Government sought to overturn <u>Mayo</u> in <u>Harris</u>, as stated <u>infra</u> at n 2.

[6] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

[7] We review a district court's order denying a motion to suppress for clear error as to findings of fact and exercise plenary review over legal determinations. <u>United States v. Dyer</u>, 54 F.4th 155, 158 (3d Cir. 2022).

[8] To evaluate whether a legitimate expectation of privacy exists, we must determine whether "(1) the individual demonstrated a subjective expectation of privacy in the subject of the search and (2) this expectation of privacy is objectively reasonable." <u>United States v. Cortez-Dutrieville</u>, 743 F.3d 881, 884 (3d Cir. 2014).

An individual may abandon his legitimate expectation of privacy. United States v. Harrison, 689 F.3d 301, 307 (3d Cir. 2012). Abandonment turns not on physical abandonment of the object or location being searched but rather whether the individual abandoned a reasonable expectation of privacy in the item or place itself. United States v. Fulani, 368 F.3d 351, 354-55 (3d Cir. 2004) (rejecting defendant's argument that he had to physically distance himself from his luggage stored in the overhead rack on a bus to abandon it where he explicitly and implicitly denied ownership to the police). Intent to abandon a legitimate expectation of privacy must be established by "clear and unequivocal evidence." Harrison, 689 F.3d at 307. "In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish abandonment." Id.

Small abandoned his legitimate expectation of privacy in the backpack. Although Small arguably demonstrated a subjective expectation of privacy by attempting to hide the backpack under his seat (though this act could also be viewed as an effort to physically abandon the backpack in the closed car), any subjective expectation was rendered objectively unreasonable when he explicitly disclaimed ownership by stating "this is not my backpack." App. 163. See United States v. Cortez-Dutrieville, 743 F.3d 881, 884-85 (3d Cir. 2014); see also United States v. Denny, 441 F.3d 1220, 1227-28 (10th Cir. 2006) (stating that a passenger's act of hiding a plastic bag underneath his seat demonstrated a subjective expectation of privacy, but it was objectively unreasonable to expect an officer to recognize defendant's property interest when he denied knowledge of the bag and disclaimed ownership of it).

Small thus abandoned his legitimate expectation of privacy in the backpack, and the District Court therefore appropriately concluded that he lacked standing to challenge the search of the bag,[9] and correctly denied the suppression motion.

B

We next examine Small's claim that the long delay between his plea and sentencing violated his due process right to a speedy sentence.[10] Convicted defendants

---

[9] Small argues that his disclaimer of ownership is irrelevant because he was either (1) a lawful bailee of the backpack or (2) in legal possession of the backpack. Small did not raise the bailee argument before the District Court, and thus it is forfeited. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146-48 (3d Cir. 2017). Moreover, Small's legal possession argument does not provide a basis for relief. The Supreme Court has rejected the notion that legal ownership alone grants the owner a reasonable expectation of privacy. Rawlings v. Kentucky, 448 U.S. 98, 105 (1980); see also United States v. Salvucci, 448 U.S. 83, 91 (1980) ("[P]roperty rights are neither the beginning nor the end of [the] inquiry."). For purposes of Fourth Amendment standing, we do not generally "examine[] the individual's . . . property interest in the item" at issue. Fulani, 368 F.3d at 354. Rather, we consider ownership only insofar as a disclaimer thereof can indicate one's intent to abandon a privacy interest. See id. ("[Defendant's] explicit denial of ownership . . . show[s] [his] . . . abandonment of his privacy interest.").

[10] Although Small did not explicitly assert before the District Court that the delays in his sentencing violated due process, he invoked his right to due process by his three requests that the District Court sentence him, and therefore preserved his due process claim. Indeed, evidence that a defendant "urged the speedy disposition of his case" is enough to show he raised a speedy sentencing due process claim. See Burkett v. Fulcomer, 951 F.2d 1431, 1441 (3d Cir. 1991) ("Burkett II"); see also United States v. Lacerda, 958 F.3d 196, 220 (3d Cir. 2020) (holding that the defendant had "asserted his right to a speedy sentencing" in a motion where he had requested only an expedited resolution without asserting a Due Process or Sixth Amendment right to a speedy sentencing and where the district court made no finding on a speedy sentencing claim); see also Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."). Because Small preserved his speedy sentencing argument, we review his due process claim de novo and review factual findings for clear error. Burkett II, 951 F.2d at 1437.

have a due process right to a speedy sentencing.  See, e.g., Betterman v. Montana, 578 U.S. 437, 447-48 (2016) (noting that at the sentencing stage "due process serves as a backstop against exorbitant delay"); United States v. Lacerda, 958 F.3d 196, 219 (3d Cir. 2020) (stating that "the convicted defendant maintains his due process rights" at the sentencing stage).  To determine whether a defendant was deprived of this due process right, we consider: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) any prejudice suffered by the defendant." Lacerda, 958 F.3d at 219-20.  No factor is "necessary or sufficient" to find a due process deprivation, but rather they are "related factors and must be considered together with such other circumstances as may be relevant."  Burkett v. Fulcomer, 951 F.2d 1431, 1439 (3d Cir. 1991) ("Burkett II") (quoting Barker v. Wingo, 407 U.S. 514, 533 (1972)).  Courts must therefore engage in a "difficult," "sensitive," and "fluid" "balancing" of the factors.  Id. (quoting Barker, 407 U.S. at 533).

The length of delay between conviction and sentencing is a "threshold requirement," and a lengthy enough delay will "invite[] inquiry" into the remaining factors.  Id.  Here, the delay between Small's guilty plea and his sentencing was over four years, as he pleaded guilty on September 20, 2017, and was sentenced on March 10, 2022.  This is a substantial delay that weighs heavily against the Government.  See Lacerda, 958 F.3d at 220 (observing a two-and-a-half year or more delay was

---

Additionally, Small did not waive his right to challenge the delay of his sentence in his plea agreement.  Small's plea agreement allowed him to file a direct appeal of his sentence if the Government appealed.  The Government appealed the sentence on April 6, 2022, Case No. 22-1631, Dkt. No. 1-1 (3d Cir.), and therefore the exception applies.

"substantial"); see also Burkett II, 951 F.2d at 1439 (holding that a twenty-nine month delay was sufficient to invite inquiry into the remaining factors, and noting cases with other more "egregious" delays spanning from thirty-one months to six years). We therefore balance the remaining factors to determine whether the delay in this case violated Small's due process rights.

We first consider the reasons for the delay. Here, the reasons differed over the course of the more than four-year delay, and thus we consider each portion of the delay between his plea and sentencing. Small does not assert that the time between his September 2017 plea and his original December 2017 sentencing hearing was problematic, and thus it does not weigh in favor of a due process violation.

We next consider the period between December 2017 and October 2020. At the December 2017 hearing, Small argued that the then-applicable law supported a non-ACCA sentence, but the District Court determined that it needed time to evaluate the evolving law and scheduled sentencing for March 2018. In his February 2018 sentencing memo, Small acknowledged that the Supreme Court's ruling in United States v. Voisine, 579 U.S. 686 (2016), was the subject of two cases before this Court and that if the District Court was "[dis]inclined to rule on the Voisine issue until the Third Circuit ha[d] spoken, it should reserve a decision until both Santiago and Harris" were decided. App. 350. Thus, as of February 2018, Small agreed that the resolution of Voisine was dispositive and he expressed a willingness to accede to a delay until the en banc court ruled. He repeated his request to delay the sentencing (1) in a May 2018 letter, where he sought a delay until early fall 2018, (2) in a September 2018 letter, where he sought a

10

delay until Harris was decided, and (3) in a July 2019 unopposed motion to continue the sentencing pending a resolution in Harris. He did not assert his right to be sentenced until October 2020. Thus, because Small sought or agreed to delay the sentencing from at least February 2018 through October 2020, this period weighs against Small and not the Government. Lacerda, 958 F.3d at 220.

We next consider the reasons for delay during the period between October 2020 and January 2021. In late October 2020, Small notified the District Court that he no longer wished to wait for the pending cases. Two days later, the Court scheduled a hearing for December 2020, which was postponed "due to [the] COVID-19 pandemic" until January 2021. App. 17. Thus, the Court acted promptly on his request but could not then proceed due a neutral reason: the pandemic. This period of delay weighs against neither party. See United States v. Keith, 61 F.4th 839, 853 (10th Cir. 2023) (considering a Sixth Amendment speedy trial claim and noting that "no circuit has yet published an opinion classifying COVID-19 delays under the second Barker factor," but determining that COVID-19 is "a truly neutral justification—not favoring either side"); United States v. Jones, No. 21-3252, 2023 WL 1861317, at *8 (6th Cir. Feb. 9, 2023) (holding no violation of Sixth Amendment speedy trial right because the "public health challenges posed by COVID-19" and defense counsel's non-COVID delays outweighed defendant's assertion of his speedy trial right).[11]

---

[11] See also In re: Video Teleconferencing and Telephone Conferencing for Criminal Proceedings Under the Cares Act – Second Extension, Standing Order, available at

We next examine the reason for the delay from January 2021 until March 2022. Like the earlier periods, the District Court delayed the sentencing to await a decision in Borden, which was resolved in June 2021, and Harris, which was still pending when Small was ultimately sentenced. Whether a delay in sentencing due to a lack of clarity in the law is proper will depend on the circumstances of a particular case. Absent some sort of bad faith or dilatoriness, a delay cause by the wait "does not weigh strongly, if at all, against the [G]overnment." Gov't of V.I. v. Burmingham, 788 F.2d 933, 937 (3d Cir. 1986) (noting that the delay of a trial due to the court's attempt to reach a decision en banc on the applicability of the relevant law was not a deliberate attempt to "hamper the defense"). Rather, a court may consider the following factors, among others, when evaluating the reasonableness of a delay: (1) the strength of the legal position on appeal, (2) the importance of the issue in the posture of the case, and (3) whether there was bad faith or dilatoriness.[12] See United States v. Loud Hawk, 474 U.S. 302, 315-16 (1986) (considering these factors in evaluating a trial delay due to an interlocutory appeal).

Applying these factors here shows that the delay while waiting for Borden and Harris does not weigh against the Government. First, for the period from January 2021 until March 2022, the lack of clarity in the law was evidenced by the fact that both our Court sitting en banc in Harris and the Supreme Court in Borden chose to consider the

---

https://www.paed.uscourts.gov/documents/standord/StandingOrderExtendingVidTelCrProceedings2.pdf (prohibiting in-person felony sentences and permitting remote sentencing if a district court judge found that a felony sentencing could not be further delayed "without serious harm to the interests of justice").

[12] The Court also observed that sometimes consideration also should be given to the seriousness of the crime. Loud Hawk, 474 U.S. at 315.

12

proper application of the ACCA, which could have had an impact on Small's sentence because, as noted, the resolution of each case would determine whether two of Small's prior convictions qualified as ACCA predicates.[13]  Second, while Small contends the Government sought to wait in the hope that these courts would announce holdings that would result in a harsher sentence, there is nothing to show the Government or the Court acted in bad faith.[14]  In fact, Small's own requests for continuances were based on the pending Harris and Santiago cases and they remained relevant to his sentencing.  In sum, while there was a lengthy delay in imposing sentence, Small agreed to several years of it.  As to the additional fourteen months during which Small asserted his desire to be sentenced, the same relevant cases remained pending before the en banc Court and

---

[13] We note that the District Court stated that it would proceed to sentencing after the Supreme Court issued its opinion in Borden, and on this basis, it would be fair to say that Small reasonably expected to be sentenced closer to June 2021.  Borden, however, addressed only whether crimes that could be committed with a reckless mens rea qualified as ACCA predicates, 141 S. Ct. at 1821-22, and did not explicitly address the Pennsylvania aggravated assault crime that Small committed.  Harris was expected to directly address whether that crime qualifies as an ACCA predicate, so we cannot say that the District Court lacked good reason to wait for the ruling in Harris.  In fact, we have stayed many cases pending Harris.  That said, it was equally reasonable for the District Court to proceed to sentence Small given the passage of time.

[14] Our dissenting colleague relies on United States v. Tanner, 544 F.3d 793 (7th Cir. 2008).  Tanner involved an evaluation of whether there was good cause to grant a defendant's request for a continuance of a sentencing to take advantage of a favorable Guideline amendment, and was not rendering any views about due process violations.  In any event, "[s]entencing judges can properly grant continuances to await clarification of the law, e.g., United States v. Brown, No. 00-CR-939, 2004 WL 1879949, at *1 (N.D. Ill. Aug. 18, 2004), or, what is analytically similar, if an impending change in law would require modification of a judgment entered on the basis of the law currently in force." Tanner, 544 F.3d at 795.

Supreme Court.[15] Thus, despite Small's assertion of his right to be sentenced during the latter portion of the period, the reasons for delay do not weigh against the Government.

Finally, Small has not demonstrated prejudice. First, his contention that he lost the chance to earn time credit under the First Step Act during the period of delay is speculative. Although he may have sought to earn such credit had he been sentenced, whether he would have earned the time credits is subject to a complex set of requirements that include both his program participation and his classification under a risk assessment tool. 18 U.S.C. § 3632. His potential denial of opportunities to earn the time credit is too speculative to demonstrate prejudice.[16] See Burkett II, 951 F.2d at 1443.

Second, the delay of his appeal did not cause him prejudice. While delays in the appellate process can violate due process in some circumstances, Burkett II, 951 F.2d at 1446; Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987) ("Burkett I") ("Where post-verdict delays not only impede sentencing but also the appeal as of right, the [due process] clause is doubly implicated."), "not every delay in the appeal of a case, even an inordinate one," does so. Burkett I, 826 F.2d at 1221 (quotation marks omitted). Here, Small has not shown that the delay in appeal impaired his defense. See, e.g., Barker, 407 U.S. at 532 (noting that the "most serious" prejudice to the defendant is "the possibility

---

[15] The dissent posits that Small's situation is similar to the defendant in United States v. Baron, 336 F. Supp. 303, 305-06 (S.D.N.Y. 1971), but that case involved a speedy trial violation claim based upon the Government's decision to try eleven separate cases, serially, to obtain a tactical advantage. This differs from Small's situation, where the delay was to enable both parties and the Court to obtain clarification of the law.

[16] Moreover, although a pretrial detainee's inability to avail himself of institutional rehabilitative programs can contribute to a finding of prejudice, Burkett II, 951 F.2d at 1443, it does not, standing alone, establish prejudice.

14

that the defense will be impaired").  Indeed, he would be hard-pressed to do so here where the facts underlying the suppression issue were not contested, and the applicable law was settled.

Third, he has not asserted his pretrial detention was oppressive or that he suffered unusual anxiety as compared to other defendants awaiting sentencing and hoping for a successful appeal.  See, e.g., Burkett I, 826 F.2d at 1222.  Of course, "a certain amount of anxiety is bound to accompany criminal charges, [but] only unusual or specific problems of personal prejudice will satisfy" this factor.  Heiser v. Ryan, 15 F.3d 299, 305 (3d Cir. 1994).  Small has presented no facts that suggest his anxiety was out of the ordinary, and so he has failed to show prejudice due to anxiety.[17]  Cf. Burkett II, 951 F.2d at 1444 (declining to conclude that evidence that the defendant's anxiety resulted in "lack of sleep, loss of appetite, loss of companionship and emotional stress associated with his inability to determine the length of his incarceration" would on its own support relief but noting that it did "tip the scale slightly in [the defendant's] favor").

In sum, Small has not shown that the reasons for the lengthy delay weigh in his favor or that he was prejudiced by the delay and, therefore, his due process right to a speedy sentence was not violated.

III

---

[17] As to prejudice, the dissent cites Heiser v. Ryan, 15 F.3d 299, 307 (3d Cir. 1994), as teaching that generalized anxiety in combination with a lack of access to rehabilitation programs is sufficient for a finding of prejudice.  Burkett II, however, a case on which Heiser relies, holds that the anxiety that a defendant must experience, with or without other circumstances, must be "above the level of anxiety indigenous to any term of incarceration."  Burkett, 951 F.2d at 1444.

15

For the foregoing reasons, we will affirm.

ROTH, <u>Circuit Judge</u>, dissenting

I join my colleagues in affirming the District Court's denial of Small's suppression motion. For the well-stated reasons set forth in Part II.A of the opinion, I conclude that the District Court did not clearly err in determining that Small abandoned his legitimate expectation of privacy in the backpack and properly held that Small lacked standing to challenge the bag's search. Nevertheless, I respectfully dissent from Part II.B. Under the *Barker v. Wingo* framework, I find the reasons for the delay in sentencing weigh against the government and that Small adequately demonstrated prejudice. Accordingly, I would hold that Small demonstrated that the lengthy delay violated his due process right.

## I.

Federal Rule of Criminal Procedure 32(b)(1) requires courts to "impose sentence without unnecessary delay." Coupled with this procedural rule, the constitutional right to "due process serves as a backstop against exorbitant delay."[1] As explained by the Majority, to determine whether a sentencing delay breaches an individual's constitutional rights, we apply the framework set forth by the Supreme Court in *Barker v. Wingo*, balancing "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) any prejudice suffered by the defendant."[2] I agree with my colleagues that

---

[1] *Betterman v. Montana*, 578 U.S. 437, 447 (2016) (quotations omitted) (quoting Fed. R. Crim. P. 32(b)(1)).

[2] *United States v. Lacerda*, 958 F.3d 196, 219–20 (3d Cir. 2020); see Op. Lines 160–74.

1

the first and third factors weigh against the government.[3] Accordingly, my dissent centers on the remaining factors, particularly the reason for delay.

It is true that Small either initiated or agreed to continuations of sentencing between December 2017 and October 2020.[4] While the Majority assesses this time against him,[5] I view this as a neutral factor. The District Court proposed the initial continuance. The government and Small, who both expressed concern about an open-ended delay, cautiously accepted. The government then joined or expressly declined to oppose Small's subsequent requests for delay. Given the parties' united front on the delay during this period and the fact that neither was clearly advantaged, I would hold it equally against the parties, or at most only weakly against Small because he initiated the requests.[6]

Small began to assert his right to proceed to sentencing in October 2020. I would not hold the subsequent one-month delay caused by the COVID-19 pandemic against either party.[7] However, sixteen months then ensued during which sentencing was delayed at the government's request over Small's objections. This period alone exceeds the one-year threshold that courts consider "presumptively prejudicial" for *Barker* purposes.[8]

---

[3] Op. Lines 167–77, 153 n.10.

[4] *See* Op. Lines 183–99.

[5] Op. 198–99.

[6] *See Burkett v. Fulcomer* ("*Burkett II*"), 951 F.2d 1431, 1439 (3d Cir. 1991) ("Burkett II") (quoting *Barker v. Wingo*, 407 U.S. 514, 533 (1972)) (discussing the "sensitive" and "fluid" "balancing" required by this analysis).

[7] *Accord* Op. Lines 2054–13.

[8] *United States v. Thomas*, 167 F.3d 299, 304 (6th Cir. 1999) (quotations omitted) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see United States v. Yelverton*, 197 F.3d 531, 537 n.8 (D.C. Cir. 1999) (citing *United States v. Lindsey,* 47 F.3d 440, 443 (D.C. Cir.), *vacated on other grounds, Robinson v. United States,* 516 U.S. 1023 (1995)); *Perez v. Sullivan*, 793 F.2d 249, 255 (10th Cir. 1986).

As the Supreme Court has observed, "the time for sentence is of course not at the will of the judge. Rule 32(b)(1) of the Federal Rules of Criminal Procedure requires the imposition of sentence 'without unreasonable delay.'"[9] Any delay "must not be purposeful or oppressive."[10] In *United States v. Tanner*, the Seventh Circuit Court of Appeals held, in light of Rule 32(b)(1)'s command, that it "is improper for a judge to grant (or deny) a continuance for the very purpose of changing the substantive law applicable to the case."[11] The court affirmed the District Court's decision not to delay sentencing for five months, at the defendant's request, for the purpose of enabling the defendant to benefit from revised guidelines that would then be in effect.[12] The court observed that, while the "decision to grant or deny a continuance (the conventional term for an interim delay in a litigation) is a management tool,"[13] "[i]t is especially improper for a judge to delay sentencing because he wants to give the defendant a lighter (or a heavier) sentence than the current law permits."[14] The court underscored that "[a] sentencing judge cannot rightly say, 'I do not like the

---

[9] Fed. R. Crim. P. 32(b)(1); *see Pollard v. United States*, 352 U.S. 354, 361 (1957) (quoting Rule 32(b)(1)).

[10] *Pollard*, 352 U.S. at 361; *see Burkett II*, 951 F.2d at 1440; *Hedgepeth v. United States*, 364 F.2d 684, 688 (D.C. Cir. 1966). While we have not expressly analyzed the import of *Pollard*'s proscription against "oppressive" delay in the sentencing context, the fourth prong of the *Barker* analysis—prejudice—appears to address this issue. The Second Circuit Court of Appeals, which does not use the *Barker* factors to guide its due process analysis, has held that an oppressive delay exists where there is "both prejudice and an unjustified reason for the delay." *See United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009) (citing *United States v. Brown,* 498 F.3d 523, 528 (6th Cir. 2007)).

[11] *United States v. Tanner*, 544 F.3d 793, 796 (7th Cir. 2008) ("A sentencing judge cannot rightly say, 'I do not like the current guidelines, so I am continuing the sentencing hearing in the hope and expectation (in this case, the certainty) that they will change.'").

[12] *Id.* at 794–95.

[13] *Id.* at 795 (citing *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)).

[14] *Id.* at 796 (emphasis added).

3

current guidelines, so I am continuing the sentencing hearing in the hope and expectation . . . that they will change.'"[15]

Here, the District Court delayed sentencing in anticipation that we might change our interpretation of the Armed Criminal Career Act. Contrary to the Majority's assertion, there was no "lack of clarity" in the law during the relevant period here. Rather, as the government repeatedly acknowledged—and as the District Court finally conceded—the court was bound to sentence Small under our 2018 holding in *United States v. Mayo*.[16] At Small's final sentencing hearing, the court expressed its frustration with the categorical approach and our holding in *Mayo* as it applied to Small.[17] Our system of justice demands that "District courts are bound by the law of their own circuit. . . . no matter how egregiously in error they may feel their own circuit to be."[18] That the government,

---

[15] *Id. See Kolman v. Kolman*, 58 F.R.D. 632, 633 (W.D. Pa. 1973) ("While plaintiff may have an interest in seeking a continuance until the new rules become effective, defendant on the other hand has an equally strong interest in seeing that the case is tried at once . . . .").

[16] *Mayo*, 901 F.3d at 220. Indeed, even as we sought clarification of the law from the Pennsylvania Supreme Court in *Harris*, we emphasized *Mayo*'s binding effect. *See* Pet. Cert. Question Law 6, Jan. 4, 2022, ECF248 ("In deciding Harris' appeal, we are bound by our precedent in *Mayo*.").

[17] App. 443–45, 449–50. *See also* App. 454 (stating "I'm just hesitating, because the result is just—it's just so hard to swallow that we could be debating whether [Small's particular conduct] is not an agg[ravated] assault. It's really perplexing and frustrating.").

[18] *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981); *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.").

4

throughout Small's sentencing proceedings, was attempting to overturn that holding[19] did not make it less clear or weaken its binding impact.[20]

Additionally, "the government's motive for the delay plays an important role in determining whether a due process violation has occurred."[21] In *Barker*, the Supreme Court noted that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," adding "it is improper for the prosecution intentionally to delay 'to gain some tactical advantage.'"[22]

Here, after Small asked to proceed in October 2020, the government purposefully sought to delay Small's sentencing until decisions were issued in two pending sentencing appeals, *Borden v. United States*[23] and *United States v. Harris,*[24] in order to facilitate its

---

[19] *See* Op. Line 110 n.5.

[20] In addition, both the Majority, Op. Line 244 n.13, and the District Court acknowledge that we have stayed many cases pending *Harris*. But our management of our docket is irrelevant to the question of whether the District Court improperly delayed Small's sentencing. To the extent that the District Court's decision to delay was based on its expectation of congestion or delay within the court system, it must be 'weighed against the government.'" *See Burkett II*, 951 F.2d at 1439–40. Finally, the District Court's apparent haziness about its obligations not to unreasonably delay sentencing should weigh against any presumption that it fulfilled them. *See* App. 332 ("I seem to remember there's some case law out there that says the Defendant is entitled to a prompt sentencing. It's not as— it's not like a Speedy Trial Act issue, but you can't kick the can down the road forever"); App. 409 ("I'm not really a student in this area of the law, but. I know he's entitled to a prompt sentencing, but it's not as exacting as a prompt trial. It's not a speedy trial exacting, I think.").

[21] *United States v. Sanders*, 452 F.3d 572, 581 (6th Cir. 2006).

[22] *Barker*, 407 U.S. at 531, 531 n.32 (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)).

[23] 141 S. Ct. 1817 (2021). In *Borden*, the Supreme Court determined that a criminal offense that can be committed by recklessness does not constitute a "violent felony" under the ACCA.

[24] 68 F4th 140 (3d Cir. May 17, 2023). Here, the government unsuccessfully challenged our holding in *Mayo* that Pennsylvania's first-degree aggravated offense does not qualify

5

litigation of Small's case.  To justify this delay, the Majority relies on case law arising in the distinguishable context of interlocutory appeals.[25]  On an interlocutory appeal, the defendant can participate in the substantive and procedural development of the case.  Here, Small could only watch from the sidelines as *Borden* and *Harris* wound through the courts, unable to raise any argument that might differ from those put forward by the defendants in those cases.  Rather, Small's situation is more akin to that of the defendant in *United States v. Baron*, where sentencing was delayed because of the government's strategic decision to try Baron and ten other individuals on similar charges serially in hope that the iterative process would clarify a point of law, "accumulate knowledge as to how such cases are best tried," and avoid "inconsistent results."[26]  As the District Court for the Southern District of New York put it, in ruling for the defendant:  "[T]he rights of this defendant should not have been 'sacrificed' in order to give Government lawyers a chance to 'practice.'"[27]

For the foregoing reasons, I find the second factor of the *Barker* analysis weighs heavily against the government.

## II.

---

as a violent felony under the ACCA because it "does not categorically require the use of physical force against another."  *Id*. at 143 (citing *Mayo*, 901 F.3d at 224, 230).

[25] Op. Line 227–239 (citing *Virgin Islands v. Burmingham* 788 F.2d 933, 937 (3d Cir. 1986); *United States v. Loud Hawk*, 474 U.S. 302, 315–16 (1986)).

[26] *United States v. Baron*, 336 F. Supp. 303, 305–06 (S.D.N.Y. 1971).

[27] *Id.* at 306.

I also find that Small has met his burden to show prejudice, the fourth *Barker* factor. The defendant's burden to show prejudice is significant in the post-conviction context.[28] The fact that Small was ultimately sentenced within the Guideline range, and not as an armed career criminal, "weighs heavily against" him.[29] Moreover, although Small indicates that he experienced anxiety arising from the uncertainty around his sentencing, "in a post-verdict, presentence context, 'mere generalized anxiety' is not enough to show prejudice . . . particularly where a defendant, as here, is serving a mandatory minimum term of imprisonment while awaiting sentencing."[30]

Nevertheless, Small has alleged forms of prejudice that we have recognized, including the inability to participate in institutional programming. We have acknowledged prejudice arising from a defendant's "inability to avail himself of institutional programs he would have had in the state prison but did not have in the county penal system where he was incarcerated during the pendency of his sentencing."[31] While the Majority correctly

---

[28] *Burmingham*, 788 F.2d at 936 ("Prejudice is the key factor here, and its absence is decisive in this case.").

[29] *Lacerda*, 958 F.3d at 220 (finding that the defendant's "[g]uidelines range was unaffected [by the delay], [so] he has failed to show prejudice"); *see Brady v. Superintendent, Anne Arundel Cnty. Det. Ctr.,* 443 F.2d 1307, 1311 (4th Cir. 1971) ("[W]here, as here, the delay falls between conviction and sentence, and at sentencing defendant receives the minimum punishment that could be imposed, the prejudicial effect of delay cannot be assumed.").

[30] *United States v. Gibson*, 353 F.3d 21, 28 (D.C. Cir. 2003) (citing *Yelverton,* 197 F.3d at 538 n.9); *see Heiser v. Ryan*, 15 F.3d 299, 305 (3d Cir. 1994); s*ee also Hakeem v. Beyer*, 990 F.2d 750, 762 (3d Cir. 1993) (explaining that "[v]ague allegations of anxiety are insufficient" and "evidence of psychic injury" is required).

[31] *Heiser,* 15 F.3d at 307; *Burkett II,* 951 F.2d at 1443. *But see Betterman*, 578 U.S. at 437, 447 n.9 (explaining that "a convicted defendant has no right to serve his sentence in the penal institution he prefers").

observes that neither this nor anxiety *alone* can support a finding of prejudice,[32] we have recognized both as a source of prejudice *in combination*.[33] Small has also identified his inability to timely appeal his conviction as a source of prejudice. We have held that delaying a defendant's right to appeal his conviction is *itself* prejudicial, regardless of the merits or underlying success of that appeal.[34] In doing so, we explained that "[w]here post-verdict delays not only impede sentencing but also the appeal as of right, the [due process] clause is doubly implicated" and that "due process can be denied by any substantial retardation of the appellate process."[35]

Accordingly, I would hold that Small has met his heavy burden to show prejudice by demonstrating that his delayed sentencing caused him undue anxiety, deprived him of access to rehabilitative programs, and prevented him from timely appealing his conviction.

\* \* \* \* \*

For the foregoing reasons, I join my colleagues in affirming the District Court's denial of Small's motion to suppress, but dissent from the determination that the delay in Small's sentencing did not infringe upon his due process right.

---

[32] Op. Lines 271–81.

[33] *See Heiser*, 15 F.3d at 307 (citing *Burkett II*, 951 F.3d at 1445–46).

[34] *Burkett I*, 826 F.2d 1208, 1221 (3d Cir. 1987), *abrogated on other grounds by Betterman II*, 578 U.S. 437.

[35] *Id.* (quoting *Rheuark v. Shaw,* 628 F.2d 297, 302 (5th Cir. 1980)). *But see Yelverton*, 197 F.3d at 538 (finding protection of the right of appeal implicit in Rule 32(b)(1) and that deprivation of this right goes to remedy).

8