IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
November 07, 2023 02:41 PM
ST-2022-CR-00268
**TAMARA CHARLES**
**CLERK OF THE COURT**



IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

THE PEOPLE OF THE VIRGIN ISLANDS,    )
    )
          Plaintiff,    )    **Case No. ST-2022-CR-00268**
    vs.    )
    )
ANGEL ALEJANDRO GUERRERO,    )
          Defendant.    )
_____    )

Cite as 2023 VI Super 67U

## <u>MEMORANDUM OPINION</u>

¶1    **THIS MATTER** is before the Court on Defendant Angel Alejandro Guerrero's ("Guerrero" or "Defendant") Motion to Suppress, filed July 6, 2023. The People of the Virgin Islands (the "People") did not file a response to the motion. The suppression hearing was held on September 19, 2023. Assistant Attorney General Eugene James Connor, Jr. represented the People. Defendant Guerrero appeared and was represented by Clive C. Rivers, Esq. The People called Virgin Islands Police Department Officer Roger Arroyo as a witness, and he was the only witness. For the reasons set forth herein, the Court will deny Defendant's motion.

## BACKGROUND

¶2    The People have charged Guerrero in a four count Information, as follows: Count One, Unauthorized Possession of a Firearm with Conversion Kit and Extended Magazine, in violation of V.I. CODE ANN. tit. 14 §§ 2253(e), 2253(d)(9); Count Two, Unauthorized Possession of a Firearm Within One Thousand Feet of a School, in violation of V.I. CODE ANN. tit. 14 § 2253(f); Count Three, Unauthorized Possession of a Firearm, in violation of V.I. CODE ANN.

tit. 14 § 2253(a); and Count Four, Unauthorized Possession of Ammunition, in violation of V.I. CODE ANN. tit. 14 § 2256(a)(3)(4). Defendant moves to suppress the tangible evidence as well as the statements he made at the scene.

## FACTS

¶3     On September 3, 2022, Officer Roger Arroyo, a member of VIPD's Special Operations unit, was attending a Roll Call session with other officers. During Roll Call, Sergeant G. Alexander ("Sergeant Alexander") received a phone call from VIPD's Intel Investigation Unit, in which an undercover officer in that unit reported on a possible shooting to take place at a particular bar ("Bar") in the Savan area of St. Thomas, Virgin Islands. The description of the two suspects that was relayed to Officer Arroyo, and other officers in Roll Call, was: one Hispanic male wearing a jersey-style shirt and one Black male wearing a white shirt and black pants. Because the Intel Unit consistently provided credible information, the Special Operations unit deemed the tip credible and executed a plan to go to the Bar.

¶4     Officer Arroyo drove the lead car to the Bar. As he arrived, Officer Arroyo observed two persons standing immediately outside of the Bar that fit the description provided by Sergeant Alexander. Officer Arroyo testified that he was laser focused on the suspects and could not recall whether any other individuals were at the Bar when he arrived. As the officers approached the two suspects, the Black male suspect wearing a white shirt took off on foot and Officer Arroyo pursued him. The Hispanic male suspect attempted to leave the area in another direction.

¶5     The Black male suspect ran down a nearby alley with a firearm. But Arroyo lost sight of that suspect and that suspect fled the scene without apprehension.

¶6    Officer Arroyo subsequently returned to his police unit located in front of the Bar to relay the events to the team. As Officer Arroyo approached the Bar, he observed Sergeant Esprit walking with the other suspect. The suspect wearing the jersey was identified as Guerrero, the Defendant in the instant case. Sergeant Esprit relayed to Officer Arroyo that he had conducted a pat down of Guerrero, which revealed ammunition and a magazine in his pocket. In addition, Officer Dowe told Arroyo that he witnessed Guerrero "toss a gun" under a nearby parked vehicle. Officer Arroyo testified that the statements Guerrero made at the scene were not in response to any questions because VIPD had not posed any questions to Guerrero.

¶7    While Officer Arroyo watched Guerrero, Sergeant Esprit inspected the surrounding area and located the firearm underneath a parked vehicle, which the forensics team later retrieved. In addition, the ammunition found in Guerrero's pocket matched the firearm retrieved at the scene.

¶8    After Dowe pointed out the gun tossed under the vehicle, Officer Arroyo read Guerrero his *Miranda* rights and placed him under arrest.

### LEGAL STANDARD

¶9    The burden of proof is originally on the defendant to establish a basis for a motion to suppress evidence under the Fourth Amendment or a statement under the Fifth Amendment. *People v. Gumbs*, 2023 VI SUPER 16U, ¶ 12 (citing *People v. Roa*, No. ST-17-CR-36, 2017 WL 2980185, at *2 (V.I. Super. Ct. June 29, 2017) (citing *People of the Virgin Islands v. Lloyd*, 2015 V.I. LEXIS 122, *6 (V.I. Super. Ct. Sept. 29, 2015)); *see also People v. Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1 (V.I. Super. Ct. Nov. 14, 2017). If the defendant succeeds in demonstrating a warrantless search or seizure occurred, the burden then shifts to "the

government to show that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *Gumbs*, 2023 VI SUPER 16U, ¶ 12 (citing *Roa*, No. ST-17-CR-36, 2017 WL 2980185, at *2).

¶10      Likewise, in the case of a violation of the Fifth Amendment, once "the accused alleges facts demonstrating that the accused was in custody and subject to interrogation, the burden shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda* and that the statement was voluntary." *Gumbs*, 2023 VI SUPER 16U, ¶ 12 (*Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1 (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

## DISCUSSION

¶11      Guerrero seeks to suppress the evidence seized from his person, the statements made at the time of arrest, and the firearm located at the scene. Guerrero argues that the People have failed to meet their burden in proving that the evidence should not be suppressed since VIPD did not have a valid warrant. He also argues the People failed to meet their burden because they did not call Sergeant Esprit – the law enforcement officer who patted down Arroyo – as a witness during the hearing. The People counter that reasonable suspicion existed at the time of Guerrero's apprehension resulting in the ultimate discovery of the evidence at issue, and that the People need not call every possible witness during a suppression hearing. Further, the People argue that Officer Arroyo's testimony established enough evidence to meet the People's burden of proof and to deny the motion to suppress.

## I.   The seizure of the items found on Guerrero and the firearm under a parked vehicle did not violate the Defendant's Fourth Amendment rights.

### a.   Fourth Amendment – Legal Standard

¶12    Guerrero argues the search and seizure at the time of arrest were not reasonable under the Fourth Amendment. Moreover, Guerrero asserts that the People failed to meet their burden at the suppression hearing by only calling Officer Arroyo as a witness.

¶13    The Fourth Amendment guarantees the right of people "to be secure in their persons ... and effects, against unreasonable searches and seizures." *People v. Martin*, 2019 VI SUPER 149U, ¶ 14 (citing *Whren v. United States*, 517 U.S. 806, 809 (1996)); U.S. CONST. amend. IV. For a search or seizure to be reasonable under the Fourth Amendment, it typically must be executed pursuant to a valid search warrant based on probable cause. *Nicholas v. People*, 56 V.I. 718, 739 (V.I. 2012). Generally, a warrantless search or seizure is per se unreasonable unless an exception applies. *Thomas v. People*, 63 V.I. 595, 605 (V.I. 2015) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

### b.   Items on Person

¶14    Guerrero argues that the ammunition and extended magazine seized from the pat-down should be suppressed as it was acquired under a warrantless search. The Defendant asserts that the People failed to meet their burden in showing that reasonable suspicion existed under the Fourth Amendment to justify the warrantless search. Further, at the suppression hearing the Defendant argued that the People should have at least called additional witnesses, such as Sergeant Esprit, to adequately meet their burden. Defendant was particularly interested in the pat down and what object Esprit believed he felt in Defendant's pocket.

¶15    An exception to the warrant requirements provides that where an officer has "reasonable and articulable suspicion of criminal activity," the Fourth Amendment permits limited search and seizure of the individual. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also Blyden v. People of the Virgin Islands*, 53 V.I. 637, 647-48 (V.I. 2010) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). Further, reasonable suspicion "need not rise to the level of probable cause—as the circumstances triggering reasonable suspicion necessitate swift action—but such suspicion must nonetheless suffice "a minimal level of objective justification."" *People v. Martin*, 2019 VI Super 149U, ¶ 15 *(Illinois v. Wardlow*, 528 U.S. 119 (2000)). As such, reasonable suspicion may be found if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Martin*, ¶ 15 (citing *Terry*, 392 U.S. at 21 (footnote omitted)). However, a warrantless search pursuant to a *Terry* stop still must be reasonable under the scope of the Fourth Amendment. *Terry*, 392 U.S. at 16-17.

¶16    The Fourth Amendment states that the Defendant bears the burden of showing a search or seizure occurred without a warrant. *Gumbs*, ¶ 12 (citing *Roa*, No. ST-17-CR-36, 2017 WL 2980185, at *2). Here, it is not disputed that the Officer's search was not supported by a search warrant. Accordingly, the burden then shifts to the People to demonstrate that reasonable suspicion justified the search. *Id.* The People argue that Officer Arroyo's testimony is sufficient to show reasonable suspicion existed and that they need not call additional witnesses for the suppression hearing. The Virgin Islands Superior Court states that reasonable suspicion exists if an officer can "point to specific and articulable facts which, taken together with rational

inferences from those facts, reasonably warrant [the] intrusion." *Martin*, ¶ 15 (citing *Terry*, 392 U.S. at 21 (footnote omitted)).

¶17     In the instant case, law enforcement received a reliable tip from the VIPD Intel Investigation Unit about a possible shooting to take place and a description of the two suspects. Upon arrival at the Bar, Officer Arroyo testified that he observed and approached the two suspects who fit the description, one of whom was Guerrero. Both suspects fled on foot in different directions before Officer Arroyo could gather information from them. As such, the tip provided by the Intel unit along with witnessing the two suspects take flight provided reasonable suspicion that criminal activity was afoot. The officers' suspicion was therefore based on "articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.*

¶18     Virgin Islands law also permits law enforcement to conduct a pat-down of the outer clothing of an individual if the officer believes the individual is "wearing, carrying, or transporting a firearm," provided that the officer also believes the person is presently dangerous. *Martin*, ¶ 15 (citing *People of the Virgin Islands v. Murrell*, 56 V.I. 796, 808 (2012) (discussing 23 V.I.C. § 488(a)). Probable cause for arrest may be found if evidence of a crime is revealed during the stop. *Id.* (citing *Blyden*, 53 V.I. 651 (finding probable cause to exist after finding a firearm on the defendant during a lawful *Terry* stop). Here, the Intel Unit provided reliable information about a possible shooting to take place. As such, it was reasonable for the officer to believe the Defendant was armed, thereby warranting a lawful *Terry* stop of Guerrero after he ran. Officer Arroyo's testimony further provided that the pat-down of Guerrero's outer clothing revealed ammunition and an extended magazine, both of which indicated evidence of a crime.

¶19    Finally, the Defendant has pointed to no legal authority that requires the prosecution to provide a certain number of witnesses to meet their burden during a suppression hearing. The Court also cannot find any governing source or authority in Virgin Islands law that supports the assertion that the People are required to call certain witnesses to demonstrate that reasonable suspicion existed at the suppression hearing. Additionally, the Court notes that Officer Arroyo was required to give his testimony under oath at the hearing.

¶20    As such, the People met their burden by calling Officer Arroyo to testify as to the events he personally observed as an officer on the scene leading up to Guerrero's arrest.  Therefore, the Court finds the initial stop and seizure of items found on Guerrero was reasonable under Fourth Amendment standards.

          c.  *Firearm*

¶21    Guerrero argues that the firearm recovered by forensics at the scene should be suppressed. According to the Defendant, the firearm located underneath the parked vehicle is encompassed under the protections of the Fourth Amendment.

¶22    The Virgin Islands Supreme Court has not yet considered whether a defendant is entitled to a reasonable expectation of privacy in abandoned property. However, the Third Circuit has clearly held that a "defendant lacks such an expectation of privacy in property that he has voluntarily abandoned." *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004). Without the expectation of privacy in voluntarily abandoned property, a defendant lacks standing to assert that the seizure of the property violates the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241 (1960).

¶23 Moreover, Virgin Islands Courts have recognized that a defendant does not have a reasonable expectation in abandoned property. *People v. Bethel*, No. SX-14-CR-246, 2017 WL 3327642, * 4 (V.I. Super. Ct. Aug. 4, 2017) (backpack allegedly discarded by Defendant before being seized constituted abandoned property and therefore not excludable); *see also United States v. Wrensford*, No. 2013-0003, 2023 WL 1778337 at *6, 2023 U.S. Dist. LEXIS 19343 at *13-15 (D.V.I. Feb. 6, 2023). However, the "property may be seized as abandoned only if it is found that the appellant was not seized at the time . . . and that such abandonment was voluntary." *Edwards v. Virgin Islands*, 2004 U.S. Dist. LEXIS 25110, 1, 2004 WL 2848509 (D.V.I. Nov. 30, 2004)

¶24 In the instant case, nothing gleaned from the suppression hearing indicates that the firearm was on Guerrero at the time he was detained. Rather, Officer Dowe told Arroyo that he witnessed Guerrero "toss a gun" under a nearby parked vehicle prior to being handcuffed by officers. A subsequent search of the surrounding area revealed a firearm located underneath a parked vehicle. Consequently, the Defendant's argument that the firearm should be suppressed fails as it constitutes abandoned property not protected by the Fourth Amendment.

II. **The voluntary statements made by Guerrero to VIPD were not in violation of his Fifth Amendment rights.**

a. *Fifth Amendment – Legal Standard*

¶25 The Fifth Amendment of the United States Constitution provides that "no person ... shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty,

or property, without due process of law." U.S. CONST. amend. V. On that basis, an officer must provide *Miranda* warnings whenever a suspect is subject to custodial interrogations. *Castillo v. People*, 59 V.I. 240, 264 (V.I. 2013) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). When an individual is in custody, they are "deprived of freedom of action in any significant way." *Ramirez v. People*, 56 V.I. 409, 419 (V.I. 2012) (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). One is subject to "interrogation" when "the Defendant responds to express questioning or its functional equivalent—words or actions reasonably likely to elicit an incriminating response." *Gumbs*, ¶ 28 (citing *Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1.).

### b. Guerrero was not interrogated.

¶26    Guerrero asserts that the statements made to law enforcement during his detainment should be suppressed under the Fifth Amendment. Further, the Defendant argued in the suppression hearing that the People have not met the burden by a preponderance of the evidence that the police complied with *Miranda* and that the statement was voluntary." *Gumbs*, ¶ 12 (citing *Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1 (citing *Colorado*, 479 U.S. 157 (1986)).

¶27    A suspect's Fifth Amendment right can be waived if they made a voluntary statement. *Castillo v. People*, 59 V.I. 240, 257 (2013). Under *Miranda*, law enforcement must inform a suspect in custody that he or she has certain rights before questioning the suspect. *Id.* at 264-65. Nonetheless, a voluntary statement may be inadmissible if procured through a violation of the Fourth Amendment. *Id.* at 257.

¶28 Here, the officers had reasonable suspicion to stop and question Guerrero as discussed above. When Guerrero was detained, the officers conducted a pat-down of his outer clothing, which revealed ammunition and an extended magazine. Additionally, Arroyo stated that when the officers on the scene were communicating with one another about a firearm that allegedly had been tossed under a vehicle, Guerrero voluntarily stated that he "found the gun nearby." Arroyo testified that Guerrero's statements were voluntary and not in response to any questions because they had not posed any questions to Guerrero. Once one of the officers announced they had observed Guerrero toss a gun and it was observed under a vehicle, Arroyo instantly read Guerrero his *Miranda* rights and placed him under arrest.

¶29 The testimony provides that the statements made by Guerrero prior to his *Miranda* warnings were voluntary and not in response to any questioning by the VIPD. As such, nothing in the facts indicates that Guerrero's Fifth Amendment rights were violated, warranting the exclusion of the statements made to the VIPD. Thus, the admission of such statements made by Guerrero does not violate his Fifth Amendment rights.

¶30 As noted above in the analysis, this Court cannot find any legal authority that supports the assertion that one witness's testimony is insufficient to meet the burden of proof in a suppression hearing. Arroyo's testimony demonstrates that the statements were both voluntary and not made in violation of *Miranda*. Additionally, Arroyo's testimony is indispensable as he was the officer who placed Guerrero under arrest and read him his *Miranda* warnings. Consequently, Guerrero's argument that the People have failed to meet their burden in showing the statements should not be admissible fails. Thus, this Court finds that Guerrero's Fifth Amendment rights were not violated.

## CONCLUSION

¶31    The Court finds that the People's presentation at the suppression hearing satisfies the burden of proof for a suppression hearing. Further, the Court has not found any legal basis or authority that requires parties to a suppression hearing to call a certain number of witnesses or any particular witness to meet their burden of proof. The Court finds that Officer Arroyo's testimony regarding the tip provided by VIPD's Intel Unit and Guerrero's decision to flee when officers approached the two suspects demonstrate reasonable suspicion. Thus, the recovery of the ammunition, extended magazine, and firearm provided the officers with probable cause to arrest the defendant. As a result, the Court finds that Guerrero is not entitled to suppression of the fruits of the search.

¶32    Further, the statements made by Guerrero to VIPD before the *Miranda* warnings were voluntary and not in response to any questioning by the officers. As such, the Court finds that defendant is not entitled to a suppression of his statements.

An order consistent herewith will immediately follow.

DATED:  November __7__, 2023

**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court

BY:  _____
    for **LATOYA CAMACHO**
    Court Clerk Supervisor  11 / 07 / 23